Argued and submitted September 19, affirmed November 1, 2000, petition for review denied January 30, 2001 (331 Or 583)

In the Matter of
Ashley Jeffords and Michelle Jeffords aka Michelle Zarate,
Minor Children,

STATE EX REL JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Deborah BURKE,
*Appellant.*

(9604-81191; CA A107173)

14 P3d 73

Peter Miller argued the cause and filed the brief for appellant.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Stuart S. Spring argued the cause and filed the brief for minor children.

Before Deits, Chief Judge, and Brewer, Judge, and Warren, Senior Judge.

BREWER, J.

**BREWER, J.**

Mother appeals from a dispositional review order in a juvenile dependency proceeding. ORS 419B.476 (1997).[1] She contends that the juvenile court erred in adopting a plan of guardianship for one of her children. On *de novo* review, ORS 19.415(3); ORS 419A.200(5), we affirm.

In May 1996, two of mother's children, Michelle and Ashley, were taken into protective custody by the State Office for Services to Children and Families (SCF) and were placed in substitute care. At the time, Michelle was 13 years old and Ashley was six. In September, the children became wards of the juvenile court with temporary custody granted to SCF. The court took jurisdiction because mother and the children were homeless, mother's drug dependence interfered with her ability to parent the children, and mother had participated in a drug transaction in the presence of Ashley.

It would serve no useful purpose to belabor the evidence concerning the events that transpired between late 1996 and June 1999. It is sufficient to note that, after a very difficult period, SCF adopted a service plan calling for reunification of mother and the children. In June 1999, however, the court held a dispositional review hearing in which it considered a request by Ashley's attorney and SCF to modify her plan to establish a guardianship with her current caretakers. Ashley's therapist testified at length in favor of that modification.

At the conclusion of the hearing, the juvenile court stated:

> "I'm most convinced in this case by the testimony and my review of the report from the child's therapist, and I just cannot make that decision to say that return to parent is in the best interests of this child at this time."

The court found that both children had been subjected to mother's substance abuse, physical neglect, and exposure by mother to criminal activity. As a result, the court concluded,

---

[1] Unless otherwise indicated, all references to ORS 419B.476 in this opinion refer to the 1997 version of that statute.

the children felt that they had been abandoned by mother and had "significant issues" to deal with. In its written order dated June 22, 1999, the court stated:

> "Over the past 18+ months mother has maintained sobriety and [has] been actively involved in all requested services. In spite of her best efforts reunification is not in the best interests of this child. Even with ongoing counseling for the child [she] has not been able to overcome the long term history of abuse and neglect the child suffered while in mother's custody."

The court concluded that "it is clearly in this child's best interests that the permanent plan of guardianship be implemented as soon as possible." The court ordered that "[SCF] shall continue the current case planning. Additionally, [SCF] shall proceed to guardianship for the current caretakers as soon as practical."

Mother appeals from the June 22 order. She makes three related arguments to support a single assignment of error: (1) that the court erroneously applied a "best interests of the child" legal standard in deciding to approve the guardianship plan; (2) that the court erred in approving a permanent plan of guardianship, because she has demonstrated her ability to parent Ashley through her successful completion of all prescribed services; and (3) that the court's order deprived mother of a fundamental liberty interest by "permanently depriv[ing]" her of custody of Ashley.

■■ The parties agree that ORS 419B.476 governed the juvenile court's dispositional authority.[2] That statute provided, in part:

> "(1) The dispositional review hearing shall be conducted in the manner provided in ORS 419B.310, 419B.317 and 419B.320, except that the court may receive testimony and reports as provided in ORS 419B.325.
>
> "(2) The court shall enter an order within 20 days after the review hearing. Where the child is in substitute care, the order shall include a determination of:

---

[2] ORS 419B.476 was substantially rewritten by the 1999 Legislature. Or Laws 1999, ch 859, § 15. That amendment did not take effect until after the review hearing at issue in this appeal.

"(a)   Whether or not the child should be returned to the parent;

"(b)   Whether or not the child should be placed for adoption;

"(c)   Whether the child should continue in substitute care for a specified period; or

"(d)   *Whether, because of special needs or circumstances, the child should be placed in the permanent custody or guardianship of a responsible relative or other individual or should continue in substitute care on a permanent or long-term basis.*

"* * * * *

"(4)   If the court determines that the child shall be placed or continued in substitute care or placed in the custody or guardianship of a relative or other responsible individual, the court shall enter written findings specifying why neither placement with parents nor adoption is appropriate. If the current placement is not expected to be permanent, the court shall specify a projected timetable for return home or another permanent placement." (Emphasis added.)

We turn to mother's first argument. We agree that focus on the "best interests" of Ashley does not, alone, satisfy the standard of ORS 419B.476(2)(d). The court was required, in order to approve a plan for guardianship, to find that the "special needs or circumstances" of the child support such a decision. Although the two concepts undoubtedly overlap, they are not identical. All children have "interests," but not all have "special needs or circumstances." Having said that, the juvenile court plainly *did* consider Ashley's special needs and circumstances. The court's reliance on the therapist's report and testimony demonstrates that fact, as does the court's closing reference to the "significant issues" faced by Ashley. The June 22 order also highlights the court's application of the correct statutory principles. The court expressly found that "[e]ven with ongoing counseling for the child [she] has not been able to overcome the long term history of abuse and neglect the child suffered while in mother's custody." Without undue elaboration, on *de novo* review, we agree with the juvenile court that the evidence established that Ashley

has significant special needs that support a plan of guardianship under the test specified in ORS 419B.476(2)(d).

■       We thus turn to mother's second and third arguments, which we consider jointly. Mother argues that the juvenile court's order has, in effect, permanently deprived her of custody of her child, despite the fact that the court found that she is an adequate parent who has done a great deal to turn her life around. As mother points out, ORS 419B.476(2)(d) did not direct the court to consider her fitness as a parent. Instead, its focus was limited to the child's needs and circumstances. Thus, mother reasons, a determination that Ashley should be placed in guardianship under that test alone does not adequately protect mother's rights as a parent. The state and the child respond that the June 22 order did not sever the parent-child relationship. They note, for example, that the order provides for ongoing visitation between mother and Ashley. Further, they dispute mother's characterization of the court's order as either creating or directing the establishment of a permanent guardianship. Although they acknowledge that the June 22 order provided that a "permanent plan of guardianship" should be implemented, they point out that the court also stated on the record that "[w]e've talked, people have talked about this being a permanent placement for Ashley. I view it as being a *stable placement* for Ashley." (Emphasis added.)

■■       Mother correctly observes that establishment of a *permanent* guardianship would entail a significant curtailment of her parental rights. *See, e.g.*, ORS 125.315(1) (setting out general powers of guardians). Mother has, as she insists, a fundamental liberty interest under the Fourteenth Amendment to the United States Constitution in the preservation and enjoyment of her family. *Santosky v. Kramer*, 455 US 745, 753, 102 S Ct 1388, 71 L Ed 2d 599 (1982). The permanent loss of the right of a parent to exercise guardianship over his or her minor child is no trivial matter. The right to be a parent may not be lightly severed, either by termination or by any surrogate means that, due to its substantive features, is a close cousin. The question, therefore, is whether the June 22 order unconstitutionally offends that right.

In order to answer that question, it is critical to understand that the June 22 order did not *establish* a guardianship. That order only directed SCF to *"proceed to guardianship* for the current caretakers *as soon as practical."* (Emphasis added.) That is so because ORS 419B.476(2)(d) did not establish an independent procedure for the creation of a guardianship. It merely authorized a juvenile court to consider, on dispositional review, whether a child within its jurisdiction *should* be placed in guardianship. Ultimately, that result could be accomplished only by an independent proceeding.[3]

■     Although the parties have not referred to it, the legislature has created a procedure for the establishment of a permanent guardianship for a child within the jurisdiction of the juvenile court. ORS 419B.365 (1997)[4] provided, in material part:

> "(1)   At any time following establishment of jurisdiction and wardship under ORS 419B.100, but prior to filing of a petition under ORS 419B.500 [for termination of parental rights], *the court may hear a petition for permanent guardianship.* * * *
>
> "(2)   Except as otherwise provided in this section, the juvenile court shall hear the permanent guardianship case and follow the procedures in ORS chapter 125.
>
> "(3)   The court shall appoint as a guardian a suitable person who has petitioned the court to be appointed permanent guardian of the child and who has standing under ORS 419B.115.
>
> "(4)   *The grounds for granting a permanent guardianship are the same as those for termination of parental rights.*
>
> "(5)   The court shall grant a permanent guardianship if it finds by clear and convincing evidence that:

---

[3] The 1999 amendments to ORS 419B.476 (1999) have, if anything, made it more clear that an order entered under that section is merely a precursor to the establishment of a guardianship. ORS 419B.476(2)(d) (1999) has been deleted. ORS 419B.476(5)(c) (1999) now provides that in adopting a permanency plan, the court shall determine whether and, if applicable, when "[t]he child *will be referred* for establishment of legal guardianship[.]" (Emphasis added.)

[4] Unless otherwise noted, all references to ORS 419B.365 in this opinion refer to the 1997 version of that statute.

"(a) The grounds cited in the petition are true; and

"(b) It is in the best interest of the child that the parent *never* have physical custody of the child but that other parental rights and duties should not be terminated.

"(6) A person appointed permanent guardian has the duties and authority of a guardian appointed under ORS chapter 125. The annual report requirement in ORS 125.325 applies to a permanent guardianship granted under this section.

"(7) Upon its own motion or that of a parent, the child or the guardian, the court granting the guardianship may at any time enter orders regarding contact, visitation and child support when the orders are appropriate and in the best interest of the child. * * *

"(8) *A parent may not petition the court to terminate a guardianship once the guardianship is granted under this section.*" (Emphasis added.)

The only other form of guardianship that the legislature has established for children within juvenile court jurisdiction is guardianship as an incident to custody under ORS 419B.370. That statute provides, in part:

"(1) When the court grants legal custody to [SCF], it may also grant guardianship of the child to the office, to remain in effect solely while the child remains in the legal custody of the office.

"(2) In all other cases, the court may grant guardianship of the child to a private institution or agency to which the child is committed or to some suitable person or entity if it appears necessary to do so in the interests of the child."

ORS 419B.365 (1997), ORS 419B.370 and ORS 419B.476(2), in combination, answer mother's argument. The latter statute authorized the juvenile court to consider whether Ashley should be placed in guardianship. ORS 419B.365, on the other hand, provided the only statutory procedure for the establishment of a "permanent guardianship" for a child within juvenile court jurisdiction. The legislature specified conditions for its employment that replicate those that protect parents from the termination of their parental rights. Among other protections, proof must be by clear and convincing evidence and the court may not merely focus on

the interests and needs of the child. The court must also find that one or more of the grounds required for termination of parental rights has been proven. *See, e.g.*, ORS 419B.502 (extreme conduct); ORS 419B.504 (unfitness); ORS 419B.506 (neglect); ORS 419B.508 (abandonment). Therefore, no permanent guardianship could be established in the absence of procedural and substantive safeguards that adequately protect mother's rights as a parent.

Finally, ORS 419B.370 authorizes the establishment of a guardianship based on the interests of a child, but does not provide for a permanent guardianship. There is nothing to prevent a parent from requesting termination of such a guardianship at a future review hearing, nor is there any provision for its continuance after the court's jurisdiction ends. Thus, if pursued by SCF, a guardianship established pursuant to ORS 419B.370 would not permanently deprive mother of her rights as a parent.[5]

In conclusion, the challenged dispositional order merely paved the way for a separate guardianship proceeding. It did not violate mother's constitutional rights as a parent because, despite that order, no permanent guardianship may be established for Ashley unless the requirements of ORS 419B.365 are met.[6]

Affirmed.

---

[5] ORS 419B.476(4) required that "[i]f the current placement is not expected to be permanent, the court shall specify a projected timetable for return home or another permanent placement." The June 22 order did not specify a timetable for Ashley's return home or another permanent placement. That fact suggests that the court may, in fact, have intended to direct SCF to proceed only with a permanent guardianship for Ashley. We need not decide whether that is so, however, because in either case, the order itself did not permanently deprive mother of her rights as a parent.

[6] Nothing we have said should be taken to suggest that a plan of guardianship may be continued indefinitely if it is not implemented by either the filing of a petition for guardianship under ORS 419B.365 or the establishment of a temporary guardianship under ORS 419B.370.