Argued and submitted February 2, appeal as to February 1999 order dismissed; otherwise affirmed June 27, petition for review denied October 3, 2001 (332 Or 558)

In the Matter of Robert Brown,
Amanda Brown, Tanya Brown,
Ronald Brown and Jessica Brown,
Minor Children.

STATE ex rel JUVENILE DEPARTMENT
OF BENTON COUNTY,
*Respondent,*

*v.*

Lorie BROWN,
*Appellant.*

3381T, 3383T, 3384T, 3385T, 3386T; A105752 (Control)

In the Matter of Robert Brown,
Amanda Rae Brown, Tanya Marie Brown,
Ronald James Brown, and Jessica Brown,
Minor Children.

STATE ex rel JUVENILE DEPARTMENT
OF BENTON COUNTY,
*Respondent,*

*v.*

Alfred BROWN,
*Appellant.*

A107994
(Cases Consolidated)

27 P3d 502

George Kelly argued the cause and filed the brief for appellant Lorie Brown.

Steve Gorham argued the cause and filed the brief for appellant Alfred Brown.

Judy Lucas, Assistant Attorney General, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

This is an appeal of two orders arising out of a juvenile court proceeding that resulted in placements in permanent foster care for mother and father's five children. ORS 419B.449, ORS 419B.476. The first order, entered in February 1999, ordered that the "children will not be returned to either parent. Order for [State Office for Services to Children and Families (SCF)] to do special recruitment for adoptive resources for children." Mother appeals from that order. The second order is in the form of a judgment. It resulted from a hearing held in August 1999 and was entered in September 1999 and re-entered in November 1999. In it, the court stated that, "The parents are not a placement resource for the children," and ordered a permanent foster care placement for each child. Both mother and father appeal from that order. The parties' appeals have been consolidated for the purposes of this opinion. We dismiss mother's appeal from the February 1999 order and otherwise affirm.

In May 1994, appellants' five children were removed from appellants' home. The petition alleged that appellants have "a serious substance abuse problem which is longstanding," and that "the parents, as a result of their substance abuse, are unable to provide the care, guidance, and protection necessary for the wellbeing of the children." The court granted legal custody of the children to SCF, and they were placed in foster care, some with a relative and some with foster families. Mother initially entered into treatment for her substance abuse but by November 1994 had relapsed. By October 1995, the court was considering permanent placements for the children. Eventually, all of the children were moved to nonrelative foster care placements.

By March 1996, neither parent had made enough progress in treatment for their addictions to allow the children to return home. However, by October 1996, both parents had completed drug treatment and were employed. SCF decided to begin reintegrating the children into the parents' home during November and December 1996. Unfortunately, both parents relapsed into drug abuse before the children could be returned to them.

By May 1997, both parents were again involved in drug treatment. Throughout the remainder of 1997 and early 1998, SCF's plan for the children continued to be their reunification with their parents. In October 1998, SCF again determined that the children could begin to return to the parents' home, one child at a time, and arranged with the parents for the return of the oldest daughter on the day before Thanksgiving. Immediately before that occurred, father became intoxicated while all of the children were in appellants' home for a visit. He passed out, and then later got into an argument with the oldest son. There is evidence in the record that mother may have encouraged the children not to tell anyone about father's conduct. There is also evidence that mother reported the incident to her attorney and said that she was willing to live separately from father to facilitate the return of the children to her care.

On December 18, 1998, the court held a review hearing. Because of the above events, SCF had decided to cancel the return of the oldest daughter to the family home and not to pursue any further plans for the return of the other children. However, SCF was uncertain whether it could find adoptive placements for the children and whether adoption was in the children's best interests because of their ages and their attachment to their parents. The court gave SCF 45 days to devise a permanent plan for the children. The court made a written finding, as it had in most of its former orders, that "all reasonable efforts have been made to prevent or eliminate the need for removal of the child[ren] from the home and it is in the child[ren]'s best interests that they be placed outside the home." It then ordered a change in the direction of the case to "permanent planning for the children." Visitation was allowed to continue, and the court set a review hearing for February 1999.

At the February 26 hearing, the court heard testimony from mother and father about their circumstances, from the children's caseworker, and from a court-appointed special advocate for the children. It also received written reports about the children. It then stated orally that despite the family's desire to reunify, the case had continued for too long without providing the children any certainty as to their

futures, and ruled that "we're moving to a permanent planning approach rather than reunification approach." The court's written order (the February order) provides, "Children will not be returned to either parent. Order for SCF to do special recruitment for adoptive resources for children." The order contained a box that the court could have checked to make a "reasonable efforts" finding, but the box was left blank. Mother timely appeals from that order, and she argues that the failure of the court to include such a finding renders the order a nullity.

On August 17, 1999, the parties again appeared before the court for a hearing. The parties presented extensive testimony through witnesses and made their arguments for and against placing the children in permanent foster care or adoptive homes. Mother and father continued to urge that the children should eventually be returned to them, while acknowledging that neither of them was presently ready to assume parenting responsibility for them. The court made oral findings that the parents had been given "more than a reasonable opportunity to remedy their defects as parents" and that "SCF has provided reasonable efforts." It then took the matter under advisement. In a letter opinion dated August 26, 1999, the court concluded that the children would not be returned to their parents, that the extended family member proposed by the parents as a placement option would not be further considered, and that the placements found by SCF would be continued. An order (the September order) reflecting the court's rulings was entered in September and re-entered in November. The September order incorporated the court's oral findings of fact and conclusions of law at the August hearing and those findings contained in the opinion letter. Both mother and father appeal from that order.

■ Preliminarily, the state argues that, because the December 1998 order had already ordered SCF to "change [the] direction of the case—change to permanent planning for the children," the February order is not appealable. The state says that the order

"merely continued the status quo established by the juvenile court in its December 18, 1998 order, which ordered a

change in the permanent plan from reunification to permanent placement outside the parental home."

Mother counters that the order changed the status of the case, because the December order to shift to "permanent planning" did not necessarily mean that the children would never be returned to her, but the February order that "children are not to be returned to parents" did have that effect.

ORS 419A.200 provides that a party to a juvenile proceeding "whose rights or duties are adversely affected by a final order of the juvenile court may appeal therefrom." There are two issues presented by that standard. First, the order must be a final order. Second, the order must "adversely affect" a party. In *State ex rel Juv. Dept. v. Vockrodt*, 147 Or App 4, 934 P2d 620 (1997), a parent appealed from an order in a review hearing in which the juvenile court continued her son as a ward of the court. The state argued that the order was not appealable under the statute. We framed the issue presented by the argument as "whether [the order] substantially changed the conditions of the wardship or adversely affected a right or duty of mother." *Vockrodt*, 147 Or App at 7.[1] We observed that the order did not substantially change the conditions of the wardship, but merely continued them as they had previously been in effect. As a result, we held that it was not appealable under the statute.

Here, the record shows that the court set the date for the February 1999 hearing at the end of the December 1998 hearing, and the February hearing was not triggered by a motion by mother. The order itself does not appear to rule on any specific issue raised by mother since the last order had been entered. The remaining question is whether the February order substantially changed the conditions of the wardship ordered by the December order. At the December review hearing, the court said, "So I guess I need to take another

---

[1] *Vockrodt* imported its interpretation of ORS 419B.200(1) from *State ex rel Juv. Dept. v. Nagle*, 36 Or App 237, 584 P2d 338 (1978), which was decided under a predecessor statute. In *Nagle* we said, "Where there is no substantial change in the nature of degree of the conditions relating to the wardship or where a right or duty is not affected by a ruling on a motion, there is no appealable order." 36 Or App at 241.

look at this case to see where we are, in the not too distant future. So I'd like to look at it probably in about 45 days and see where we are and what plan, I guess I would direct SCF to come up with their permanent plan." From the court's comments, we infer that the February hearing was planned as a review of SCF's permanent plan and was scheduled by the court for that purpose. Before the December hearing, the plan had been to unite the children with their parents. However, in the December hearing, the court expressly found that all reasonable efforts to unify the family had been exhausted, and it expressly directed that SCF undertake permanent planning for the children. At that time, it should have been apparent to mother that the reunification of the family was not going to occur and that the February hearing was for the purpose of working out the details of a plan for the children's permanent placement. Because the February order does not make any substantial change in the conditions of the wardship that resulted from the December order, it is not appealable under ORS 419A.200(1). Accordingly, we dismiss mother's appeal of that order.

■    We turn to the appealability of the September order. Before the August 1999 hearing, appellants asked SCF to consider placing some or all of the children with relatives, specifically, a grandmother in California. The court was still considering that option at the close of the February hearing. At a hearing on April 9, 1999, the court heard testimony from the grandmother and other relatives and agreed to ask the California juvenile authorities to expedite the performance of a home study to determine if the grandmother was a viable custodial option for the children. At some point it was determined that the grandmother was not a placement resource. The August hearing and ensuing September order then implemented a specific permanent foster care placement for each child, each with a nonrelative foster care provider. Thus, the order issued in September 1999, ordering the children to remain in nonrelative placements, was the court's first order that ruled against appellants' request for placement of the children with relatives.

In *State ex rel Juv. Dept. v. Black*, 101 Or App 626, 792 P2d 1225 (1990), we considered a similar factual situation. There, the father had been ordered several times to participate in sex offender treatment. He requested a hearing

and moved for an order modifying the treatment requirement. The court denied the request and again entered an order requiring treatment. We held that, because the father had moved for specific relief from a provision of the order since the last order had been entered, the order was appealable. *Black*, 101 Or App at 629. Similarly, the September order is appealable because it is the first order that denies appellants' request to have the children placed with their grandmother.

■ As to the efficacy of the September order, mother and father allege that the September order is a nullity because it fails to comply with a procedural requirement. They contend that ORS 419B.337 (1997)[2] required the court to make written findings in the order that SCF had made reasonable efforts to reunify the family—a finding commonly referred to as a "reasonable efforts" finding—and that the order does not contain the required finding. The state responds that the requirement of written findings of reasonable efforts does not apply to the kind of order on appeal here, which it characterizes as a "dispositional review" order.

ORS 419B.337 (1997)[3] provides:

"(1) Where a child has been found to be within its jurisdiction, and when the court determines it would be in the best interest and for the welfare of the child, the court may place the child in the legal custody of the State Office for Services to Children and Families for care, placement and supervision. *When the court enters an order removing a child from the child's home or an order continuing care,* the court shall make a written finding as to whether:

"(a) Removal of the child from the child's home or continuation of care is in the best interest and for the welfare of the child; and

---

[2] The hearings in question were held before the 1999 amendments to ORS 419B.337 were effective. Or Laws 1999, ch 859, § 10.

[3] There have been substantial revisions to ORS chapter 419B during the time mother and father have been involved in this dependency proceeding, some of which are discussed below. For purposes of this appeal, it does not matter which version of ORS 419B.337 is used, because its provisions remained the same from 1994, when the children were initially removed, until after the hearings in question were held.

"(b) Reasonable efforts, considering the circumstances of the child and parent, have been made to prevent or eliminate the need for removal of the child from the home or to make it possible to reunify the family." (Emphasis added.)

On its face, ORS 419B.337 applies to an order "removing a child from the child's home *or an order continuing care*[.]" (Emphasis added.) According to mother and father, the September order constitutes an order continuing the care of their children, and the statute therefore requires written findings in compliance with subsection (b). The state counters that the context and the history of the statute suggest otherwise. We need not decide which interpretation is correct because we hold that, even if the September order is governed by ORS 419B.337, the statute's requirements are satisfied.

■ The September order expressly incorporates the court's letter opinion dated August 26, 1999, and the findings of fact and conclusions of law made on the record at the August 17 hearing. While none of the trial court's oral comments could satisfy the statute, which requires a writing, the letter opinion is a writing, and it contains the finding, "Ms. Okita is to be commended for her efforts to try to reunite the children with their mother. Ms. Okita genuinely wanted the mother to be able to care for the children until it became very clear that this was not going to be possible." We hold that the incorporation by reference of a writing into an order satisfies the requirement of ORS 419B.337 that there be a written finding because it fulfills the apparent purpose of the statute to memorialize the finding of "reasonable efforts."[4]

■ The second assignment of error is that there was insufficient evidence to support the court's decision to place

---

[4] The parties do not appear to argue about the sufficiency of the findings made in the letter opinion, nor do appellants argue that those findings are insufficient to satisfy the requirements of ORS 419B.337. Generally speaking, incorporated writings are considered part of the writing in which they are incorporated. *See, e.g., Hopkins and Hopkins*, 102 Or App 655, 796 P2d 660 (1990), *rev den* 311 Or 87 (1991) (trial court's opinion letter incorporated by reference into a dissolution of marriage judgment). *See also City of Pendleton v. Kerns*, 58 Or App 641, 656 P2d 101, *rev den* 293 Or 653 (1982) (LUBA order held to incorporate by reference arguments made in response to motion to dismiss).

the children in permanent foster care. Preliminarily, father urges us to hold that the evidence must be clear and convincing, because placement of the children in permanent foster care is "in essence an order terminating the parental rights of both parents, especially those of the appellant father." He argues that, "while [the order] gives the parents the ability to visit their children, it never allows them to have physical custody of their family and in fact breaks up this family." Therefore, he asserts that the clear and convincing evidentiary standard that applies to termination of parental rights cases is applicable here and that the evidence does not satisfy that standard.

Our opinion in *State v. Burke*, 170 Or App 644, 14 P3d 73 (2000), *rev den* 331 Or 583 (2001), informs our decision regarding the burden of proof. In *Burke*, the mother of two children argued that the court's order to SCF to "proceed to guardianship" of her children deprived her of a fundamental liberty interest under the Fourteenth Amendment to the United States Constitution in parenting her children. We observed that the order did not establish a permanent guardianship, but instead directed SCF to petition for permanent guardianship. We first noted that, because there were statutory procedural safeguards that would have to be satisfied before a permanent guardianship could be established, mother's procedural constitutional rights should be adequately protected in the future. We then pointed out that a guardianship incident to custody as authorized by ORS 419B.370 does not permanently deprive a parent of her rights as a parent, because the parent remains a party to the dependency proceeding, and the guardianship is always subject to termination. "Thus, if pursued by SCF, a guardianship established pursuant to ORS 419B.370 would not permanently deprive mother of her rights as a parent." *Burke*, 170 Or App at 652 (footnote omitted). Consequently, no fundamental liberty interest in parenting was implicated.

The same reasoning applies here. Under ORS 419B.115, father continues to have a right to request a hearing and to compel re-examination of the permanent placements of his children. At such hearings, he has a right to counsel, to call witnesses, and to cross-examine witnesses. Under ORS 419B.452, he has the right to receive all reports

filed with the court about his children. Finally, father has a continuing right under ORS 419B.449 and ORS 419B.476 to rebut the presumption that permanent foster care continues to be in the children's best interests. Because the statutory scheme does not permanently deprive appellants of their parental rights, we hold that the clear and convincing evidence standard was not constitutionally required in the September hearing.

■       On the merits, mother argues,

"Implied from ORS 419B.337 and 419B.343 is that a 'permanent plan' to do other than return the children to the parents requires that SCF first provide 'appropriate services to allow the parent the opportunity to adjust the parent's circumstances, conduct or conditions.' ORS 419B.343(2)(a). It is only when (a) SCF has made reasonable efforts to provide services (b) the parent has shown herself 'unable or unwilling to adjust the parent's circumstances and (c) 12 months have passed, that there is created a rebuttable presumption that an 'alternate, permanent plan' is in the children's best interests."

Father argues, using the same line of reasoning, that he and mother were shown by the evidence only to be drug addicts and that, without a stronger showing that their addiction made them unfit parents, their addictions and relapses alone are not grounds for placing the children in a permanent plan of foster care.

On *de novo* review of the record, we agree with the trial court that the best interests of the children require stable placements for the children at this time. We also agree that, in the past, SCF made reasonable efforts to stabilize and unify the family, and provided appropriate services to mother and father. Assuming without deciding that ORS 419B.343(2)(a) is applicable, those services have been ongoing for more than a 12-month period, giving rise to the presumption that SCF's alternate plan for permanent placement is appropriate. Finally, our review of the record convinces us that there is insufficient evidence to show that appellants will be able to provide the kind of stable home the children need, either now or in the foreseeable future. Consequently, we reject appellants' argument.

■ Mother and father's final assignment of error is that the court erred in refusing to place some of the children with their grandmother, who lives in California. ORS 419B.192 requires:

"(1)   If the court finds that a child is in need of placement or continuation in substitute care, there shall be a preference given to placement with relatives and persons who have a child-parent relationship with the child as defined in ORS 109.119. The State Office for Services to Children and Families shall make reasonable efforts to place the child with such persons and shall report to the court what efforts were made to effectuate such a placement.

"(2)   In attempting to place the child pursuant to subsection (1) of this section, the office shall consider, but not be limited to, the following:

"(a)   The ability of the person being considered to provide safety for the child, including a willingness to cooperate with any restrictions placed on contact between the child and others, and to prevent anyone from influencing the child in regard to the allegations of the case;

"(b)   The ability of the person being considered to support the efforts of the office to implement the permanent plan for the child;

"(c)   The ability of the person being considered to meet the child's physical, emotional and educational needs; and

"(d)   Which person has the closest existing personal relationship with the child if more than one person requests to have the child placed with them pursuant to this section."

The record shows that the court and SCF investigated the wisdom of placing the children with their grandmother. SCF took the steps necessary to obtain a home study on the grandmother's residence, and that home study revealed that there are serious concerns about the appropriateness of placement of the children there for a variety of reasons. For instance, there is evidence that mother was abused by a former member of that household when she was a child in the grandmother's care and that the alleged abuser visits the home periodically. The home study revealed that there is

insufficient room in the home for the children and that, even if the placement were appropriate for some of the children, the placement would impair the children's visitation with each other and with their parents. There is also evidence that the grandmother and her relatives became involved in this case belatedly and that the grandmother did not have a close relationship with the children before they were removed from their parents' home. Finally, there was evidence that the grandmother would need financial assistance to have custody of the children, which would not be forthcoming if she was not eligible for certification by the California juvenile authorities. Again, we agree with the trial court that permanent, nonrelative placements for the children are in their best interests.

Appeal as to February 1999 order dismissed; otherwise affirmed.