No. 512          June 4, 2025          153

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. S. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. C.,
*Appellant.*

Douglas County Circuit Court
18JU01657; A183944 (Control)

In the Matter of S. M. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. C.,
*Appellant.*

Douglas County Circuit Court
18JU01658; A183945

Ann Marie Simmons, Judge.

Submitted April 30, 2025.

Aron Perez-Selsky and Michael J. Wallace filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Father appeals from a judgment granting durable guardianship over his two children, S and A. He assigns error both to that determination and to the juvenile court's denial of his motion to dismiss. We affirm.

We begin with a threshold jurisdictional question, namely, whether the judgment establishing guardianship also constitutes a judgment denying father's motion to dismiss.[1] It does. The judgment itself is entitled "Judgment Establishing Guardianship." Yet the judgment incorporates the juvenile court's letter opinion, which denies father's motion to dismiss and grants the guardianship. "Generally speaking, incorporated writings are considered part of the writing in which they are incorporated." *State ex rel Juv. Dept. v. Brown*, 175 Or App 1, 10 n 4, 27 P3d 502, *rev den*, 332 Or 558 (2001). Thus, the judgment—by incorporating the letter opinion addressing both the motion to dismiss and the motion to establish guardianship—disposes of both those issues and creates an appealable judgment with respect to both.

We turn to the merits. Father contends that the juvenile court erred in denying his motion to dismiss jurisdiction on the basis that the conditions that led to the children's removal had been ameliorated. As the parties both note, in assessing a motion to dismiss, the court must first "determine whether the original bases for jurisdiction continue to pose a current threat of loss or serious injury." *Dept. of Human Services v. T. L.*, 279 Or App 673, 685, 379 P3d 741 (2016). If they do, the court must then "assess the likelihood that that risk will be realized." *Id.* Where, as here, the permanency plan is something other than reunification, "a parent seeking dismissal of dependency jurisdiction must prove that the bases for jurisdiction no longer pose a current threat of loss or harm to the child that is reasonably likely to be realized, thereby overcoming the presumption created by the permanency plan that the child cannot return safely to parents." *Id.* at 690.

---

[1] ODHS raises the question whether the juvenile court entered a judgment with respect to the denial of the motion to dismiss but does not take a position on that question. Father has simply assumed that we have jurisdiction.

The juvenile court concluded that the conditions that led to the children's removal and juvenile court jurisdiction—father's anger control problem and physical discipline that resulted in an impairment of the children's well-being and functioning—had not been ameliorated:

"Father's behaviors continue at an observable level. He expresses frustration at the agency, his [older child], the caseworkers, his previous treatment providers, etc. He speaks about anger control, without seeming to understand his behaviors speak otherwise. He denies certain behaviors, deflects and minimizes others, and attempts to control the narrative of both his treatment work and the court case. *** [The children] have suffered severe trauma, have for the second time begun making progress, but are at high risk to experience further trauma. The court concludes that the original bases of jurisdiction for father continue to represent a very real risk of both further loss and further injury, in fact, based on father's current behaviors the court concludes reunification after a dismissal would almost certainly result in further trauma and loss for [the children]."

We have reviewed the record and conclude that there is ample evidence to support the juvenile court's decision. The evidence shows that, although father engaged in services, he has never demonstrated (as the juvenile court found) that he is "currently capable of actually committing to the actions he would need to take" to control his anger. To the contrary, and again as the juvenile court found, "despite participation in and completion of services father lacks insight into the connection between his anger, how he acts in response to his anger, and the harms already inflicted on [the children], and the future risk of harm to them." During his testimony, father denied that he used physical discipline against the children "outside of spanking." Yet an older sibling of the children testified that father had the children sit on the steps for so long that they urinated on themselves and had them stand stretched against a wall reaching up from their tip toes for an extended period of time. The sibling further testified that father's spankings caused bruising and an inability to sit or lie down. As the juvenile court found, "the type of physical discipline described, as well as father's levels of anger, lack of control and inability to assume personal responsibility are directly related to the amount of

risk father presents to his children currently." In short, the juvenile court did not err in determining that father had not ameliorated the jurisdictional bases.[2]

We turn to father's remaining claims of error that the juvenile court erred in establishing durable guardianships over the children because, in his view, the children could have been returned to his care within a reasonable time. ORS 419B.366(6) (allowing for a durable guardianship where, among other things, the child cannot safely return to a parent within a reasonable time). ODHS contends that father both failed to preserve his argument and developed no argument on appeal in support of his claim of error. Even assuming that he adequately preserved his claim of error, and acknowledging the abbreviated nature of his argument on appeal, we conclude that the juvenile court correctly granted the guardianship because, as it found, the children could not safely return home within a reasonable time.

Affirmed.

---

[2] To be sure, father presented evidence from several providers that father's anger issues had resolved or that he needed no further treatment. However, those conclusions were largely based on father's self-reports, which omitted the abuse that he committed against the children. For instance, Charles Stepping, director of a batterer's intervention treatment program, concluded that he did not see "any value in requiring" father to attend the program. Stepping testified, however, that father never reported or took responsibility for any acts of violence perpetrated against the children. Dr. Miller, a psychologist, testified that father had "resolved" his anger control issues and posed no risk of harm. However, Miller's assessment was based on father's self-reports and Stepping's assessment that father did not need treatment, a conclusion that was based on incomplete information about father's violence towards the children.