In the Matter of Rebecca Black, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF LANE COUNTY et al,

*Respondents,*

*v.*

## BLACK,

*Appellant.*

(86-675; CA A60782)

792 P2d 1225

George W. Kelly, Eugene, argued the cause and filed the brief for appellant.

Diane Sue Lefkow, Assistant Attorney General, Salem, argued the cause for respondents. With her on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge pro tempore, and Riggs and Edmonds, Judges.

**GRABER, P. J.** pro tempore

Father appeals an "order of disposition review" in this juvenile case. We affirm.

In 1986, a Children's Services Division (CSD) caseworker filed a petition that alleged that the child was within the jurisdiction of the court, because father had sexually abused her. In 1987, the juvenile court, after an extensive hearing, found the child to be within its jurisdiction for that reason. Throughout the hearing, father denied that he was guilty of abuse; he continues to deny it. Father has not been charged with any crime related to abuse. As part of its 1987 order of disposition, the court required an incest treatment program for father and provided that he should have no visitation with the child until he completed the program.

In 1989, the court held a dispositional review hearing, at which father asserted that CSD would not accept a treatment program that did not require him to admit that he had abused the child. He argued at the hearing that requiring him to make that admission would violate his right not to incriminate himself. At the end of the hearing, the court continued jurisdiction over the child and ordered that all of its previous orders remain in full force and effect. That order is the subject of this appeal.

■ The state argues that the order is not appealable, because it did not make a substantial change in the conditions relating to the wardship or affect any of father's rights or duties.[1] The state relies on *State ex rel Juv. Dept. v. Nagle*, 36 Or App 237, 241, 584 P2d 338 (1978), in which we held:

> "[W]here there is no substantial change in the nature or degree of the conditions relating to the wardship or where a right or duty is not affected by a ruling on a motion, there is no appealable order."

In describing the order in question there, we said:

> "The order merely continues the existing placement under the wardship. Except for form, it is more of a commemorative

---

[1] Before oral argument, we ordered father to show cause why we should not dismiss the appeal. On the basis of his response, we determined that the order is appealable. Because the issue is one of jurisdiction, that determination is not controlling, and we may reconsider it. *See* ORAP 7.15(3).

comment than an order. It makes no new or additional disposition. No authority is granted to CSD as custodian that had not been granted in the initial order. No right of the appellant is diminished; no duty enlarged. *No motion of any party is granted or denied.* Had there been no order, the status of the wardship would be no different. Therefore, there is no legal event with appellate significance. There was merely a supervisory look at an ongoing wardship with no substantial change ordered." 36 Or App at 240. (Emphasis supplied.)

This case is different, because father sought and was denied affirmative relief. Although he made no formal motion, he apparently requested the hearing, and he asked the court to modify the original dispositional order to state expressly that he need not complete an incest treatment program, unless it was one that did not require him to confess to a crime. The court's order effectively denied father's request for a modification. Accordingly, *Nagle* does not require dismissal. The order is appealable, and we turn to the merits.

■     We review *de novo.* ORS 419.561(4); ORS 19.125(3). The record does not support father's claim. He failed to adduce a scintilla of evidence that any incest treatment program required an admission of guilt, let alone that all treatment programs require it or that he has tried unsuccessfully to obtain treatment that would not require it. Participants in the hearing suggested in argument that some treatment programs do not require admission of guilt.

There also is no evidence that CSD required father to complete a particular program that demands an admission, that he failed to do so, or that CSD *disapproved* of father's participation in a particular treatment program that would satisfy his concerns. There is a suggestion in the discussion among the court and counsel that father is presently being treated by a Dr. Waechter, that at one time he told Waechter that the child had been abused but did not admit that he had committed the abuse, and that he had recently withdrawn that statement. The only evidence about CSD's recommendation consisted of statements by an agency representative:

> "I am standing on my recommendation [that father receive treatment,] your Honor. I believe in my report I've outlined that the therapists who know this man are using a theory of treatment which does indicate that it is in the best

interests of the child to be able to have some kind of continuing contact with both parents if that contact is on — if the child is protected, you know, prior to *or during* that contact or visitation.

"What I understand that to mean is that [the child] needs to be ready to see her father before she — she should not be forced into having contact with him and that [*father*] *needs to have addressed issues to some extent* such that he is not going to further emotionally damage her by having visitation with the child.

"I believe that the therapists who do know this family are very capable of working with them and at some point reaching a conclusion about whether visitation is going to be appropriate and when that would be." (Emphasis supplied.)

The court then asked whether "a precondition to any program" of treatment would be admission of a crime by father. The child's attorney noted that CSD does not run incest treatment programs; the court observed that "[*u*]*ltimately they're going to have to take a position* whether program A or program B is going to be in the child's best interest." (Emphasis supplied.) The agency representative then said:

"If [father] does not at some point acknowledge the abuse that occurred and deal with that, he *probably* will not be able to have *unsupervised* [contact] with his daughter. I think that it is possible that if he can work with the therapist and reach some recognition of the injuries to his daughter so that he can have supervised contact with her without further hurting her in any way, that that [*sic*] kind of contact would be a possibility." (Emphasis supplied.)

The trial court summarized its understanding of the colloquy in stating its decision:

"So the long and short of it is, [father's attorney,] at least from the agency's standpoint *they're not drawing any bright line here.*

"They're indicating that *there appears to be a need for some continued effort on your client's part* over time so that he could be prepared and the child also on the other side could be prepared [for] at least supervised visitation so there is no categoric denial of a right to have a relationship but I think there are certainly some preconditions that are necessary before that can occur, so that presumably your client could engage in the course of action here that would perhaps lead toward some relationship, although restricted as might be

indicated on the child's side and by some sort of community effort here as far as the therapists are concerned or direction that might take place down the line.

"*So I think what the agency needs to see is further effort on your client's part.* If he isn't going to admit at least with a good recognition that we're dealing with an abused child and one that takes every careful preparation before there be any contact with what at least *in the child's mind* amounts to being the abuser.

"This being the case, the child has to have considerable effort on her side of it and you would have to have considerable effort and understanding and ability to deal with that very difficult and very sensitive situation. Ultimately, the primary concern being the child's best interests and *down the line* where there is Fifth Amendment right, you're talking about may have to yield to the child's best interests. At this point it seems to me we have a reasonable balance between the two." (Emphasis supplied.)

The juvenile court's only *ruling* was to continue the *status quo*. Although the court referred to balancing father's right not to incriminate himself against the child's best interests, it did not in fact do that, because it did not order him to do anything that might incriminate himself. Father's claim that the continuing requirement of treatment amounts to a requirement that he admit to the abuse fails for lack of proof, and the legal issues that he raises are not ripe for decision.

Affirmed.