Argued and submitted September 21, reversed and remanded with instructions October 31, 2001

In the Matter of
Uriah Ni'em Carter, a Minor Child.
STATE ex rel JUVENILE DEPARTMENT
OF LANE COUNTY,
*Appellant,*

*v.*

Michelle PARSHALL,
John Carter, and Uriah Ni'em Carter,
*Respondents.*

00-592J; A112860

34 P3d 713

Katherine H. Waldo, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

George W. Kelly argued the cause and filed the brief for respondent Michelle Parshall.

James A. Palmer filed a brief for respondent John Carter.

No appearance for respondent minor child Uriah Ni'em Carter.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

■       In this juvenile proceeding, the state appeals from a dismissal of its petition for juvenile court jurisdiction. On *de novo* review, ORS 419A.200(5), we conclude that it was error for the juvenile court to dismiss the petition. ORS 419B.100(1)(c). Accordingly, we reverse.

Child was born in October 2000. Almost immediately after child was born, the state filed a petition in juvenile court asking that child be found within the court's jurisdiction because her condition and circumstances endangered her welfare. ORS 419B.100(1)(c) (juvenile court has jurisdiction over any case involving a juvenile "[w]hose condition or circumstances are such as to endanger the welfare of the person or others").

The factual bases for the state's petition, to which the parties stipulated before the juvenile court, are as follows: In February 1998, father was convicted of first-degree criminal mistreatment, ORS 163.205.[1] That conviction was based on the fact that father had either intentionally or knowingly fractured the right femur of his then two-month-old daughter, S. In addition, at the time father fractured S's femur, S was found to have several other fractures that predated the broken femur.[2]

Ultimately, father was sentenced to 24 months in prison based on his criminal mistreatment conviction. While in prison, father completed a "Pathfinders" program, which addressed issues such as stress and anger management.

---

[1] ORS 163.205 provides, in part:

"(1) A person commits the crime of criminal mistreatment in the first degree if:

"* * * * *

"(b) The person, in violation of a legal duty to provide care for a dependent or elderly person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person, intentionally or knowingly:

"(A) Causes physical injury or injuries to the dependent person or elderly person[.]"

[2] In November 2000, father's parental rights with respect to S were terminated. Father did not contest that termination.

There is no evidence that that program addressed physical abuse of young children, much less purported to treat the cause of such abuse.

In October 1999, after serving 18 months in prison, father was released on post-prison supervision. Father then enrolled in and completed a 26-week domestic violence class, but did not graduate because he failed a urinalysis test, apparently due to prescription codeine he was taking for dental problems.[3] The record does not disclose the content of that program, including whether it addressed physical abuse of young children. Since his release, father has complied with the terms of his post-prison supervision.

After hearing the evidence, the juvenile court denied the state's petition for jurisdiction:

> "Well, given the specific allegations that have been stipulated to by the parties in this case, I am not going to say that this isn't a case that gives me concern. On the other hand if I am going to look at it from a legal point of view, I am going to have to find that, that the facts that have been stipulated to in and of themselves I don't believe give rise to jurisdiction in this case regarding this particular child. And I am going to rule in this matter that the allegations giving rise to jurisdiction have not been proven. The case is dismissed."

Thus, the juvenile court, while obviously concerned for child's welfare, nevertheless felt legally compelled to deny jurisdiction in this case.

On appeal, the state, relying on *State ex rel Juv. Dept. v. Smith*, 316 Or 646, 853 P2d 282 (1993), and *State ex rel Juv. Dept. v. Brammer*, 133 Or App 544, 892 P2d 720, *rev den* 321 Or 268 (1995), argues that the facts here support juvenile court jurisdiction. We agree.

In *Smith*, a case decided under *former* ORS 419.476(1)(c),[4] the father of a six-year-old boy had engaged in

---

[3] There is no indication in the record that father's participation in either the Pathfinders program or the domestic violence class was judicially required as a result of his conviction.

[4] *Former* ORS 419.476(1)(c), which was repealed by the legislature in 1993, *see* Or Laws 1993, ch 33, § 373, is materially indistinguishable from ORS 419B.100(1)(c). Consequently, *Smith*'s discussion of *former* ORS 419.476(1)(c) is applicable to the issues presented here.

a single incident of sexual misconduct with the child's 12-year-old aunt. 316 Or at 648. The juvenile court asserted jurisdiction, and the father appealed. The issue on appeal was whether, under the circumstances, the father's single incident of misconduct with the aunt justified the exercise of jurisdiction over the son.

The Supreme Court affirmed the juvenile court's exercise of jurisdiction. *Smith*, 316 Or at 653. In so ruling, the court observed that any inquiry into whether the juvenile court should exercise jurisdiction under *former* ORS 419.476(1)(c) is fact-specific and must consider whether, in the totality of the circumstances, "there is a reasonable likelihood of harm to the welfare of the child." *Id.* at 652-53. In addition, the court noted that "[a] condition or circumstance need not involve the child directly, but may be found harmful by reason of creating a harmful environment." *Id.* at 653. Thus, the court concluded that, because the "conditions or circumstances of the six-year-old child were such as to endanger his welfare," juvenile court jurisdiction was appropriate. *Id.*

*Brammer* was similar. In *Brammer*, the mother of three children was involved in numerous sexual encounters with one of her children's best friends, T, over a period of eight months when T was between eight and nine years old. 133 Or App at 547. In holding that the juvenile court erred in denying jurisdiction over the mother's three children, we invoked *Smith* and concluded that the mother's abuse of T created a harmful environment for her own children:

> "We are unmoved by mother's claim that jurisdiction is not warranted because there is no proof that she acted inappropriately toward her own children. The court is not required to wait until other minors in the home are exploited before intervening to protect them." *Id.* at 549.

Thus, we concluded that, in the totality of the circumstances, the mother's abuse of T gave rise to a "reasonable likelihood of harm to the welfare" of her own children. *Id.*

We turn, then, to the totality of the circumstances here, and consider whether father's past abuse of S gives rise to a reasonable likelihood of harm to child's welfare. On *de novo* review, we conclude that it does. The record establishes

that father repeatedly subjected S, his daughter, to egregious physical abuse. At that time, S was a very young infant completely unable to resist or report the abuse. Child's circumstances, including her relationship to father and her vulnerability to abuse, are closely analogous. Analogous circumstances warranted jurisdiction in *Brammer* and *Smith*, and they support jurisdiction here.

Child's parents nevertheless argue that, given the fact that father has completed the Pathfinders and domestic abuse programs since his abuse of S, both *Brammer* and *Smith* are distinguishable:

"[*Brammer* and *Smith*] were related to sexual abuse allegations, and neither addresses the issue of a parent who had obtained substantial treatment in approved programs after earlier actions which subjected him to the scrutiny of the juvenile court and the prosecution of the justice system."

In parents' view, the state's failure to demonstrate that those programs did not obviate risk that father might subject child to abuse precludes juvenile jurisdiction here.

That argument is unavailing. On *de novo* review, we are unconvinced that, under the circumstances, father's participation in the Pathfinders and domestic violence programs has mitigated the potential risk to child's welfare. While father's participation in those programs is undisputed, the record does not disclose, in any meaningful fashion, the content of those programs—and, particularly, whether or how they addressed the causes and dynamics of physical abuse of young children. Nor is there any evidence (*e.g.*, testimony by a psychologist) that, as a consequence of those programs, father has meaningfully addressed the problems related to his abuse of S. Consequently, we conclude that the imposition of jurisdiction under ORS 419B.100(1)(c) is warranted.[5]

_____

[5] We note, parenthetically, that the ultimate effect of our decision upon child's parents' parental rights here could be minimal. As the state points out, "the court may determine that father has made significant progress in changing the dynamics that caused him to assault [S]. Under those circumstances, [child] could stay in the family home and juvenile court jurisdiction simply provides a framework for oversight for continued progress." Indeed, as we noted in *Brammer*: "Our decision merely places the children in the protection of the juvenile court. Whether or not they remain in the home will be determined in a subsequent proceeding." 133 Or

Reversed and remanded with instructions to enter judgment finding that child is within the jurisdiction of the juvenile court.

---

App at 549 n 5. In that proceeding, the range of potential measures that the state may seek is broad. *See* ORS 419B.090(2)(c) (the provisions of the juvenile code "shall be liberally construed to the end that a child may receive such care, guidance, treatment, and control as will lead to the child's welfare").