Argued and submitted August 23, 2001, remanded with instructions
January 23, 2002

In the Matter of
James Imus and Jared Imus, Minor Children.
STATE ex rel STATE OFFICE FOR SERVICES
TO CHILDREN AND FAMILIES,
*Appellant,*

*v.*

Jay IMUS
and Leslie Holloway,
*Respondents.*
9800282JV, 9800282JV2; A109072

39 P3d 213

Michael C. Livingston, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

James A. Palmer argued the cause and filed the brief for respondents.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

In this juvenile dependency proceeding, the State Office for Services to Children and Families (SCF) petitioned for juvenile court jurisdiction over mother, father, and their two children, alleging nine bases for jurisdiction. ORS 419B.100; ORS 419B.385. The juvenile court found the parents and children to be within the court's jurisdiction on the basis of four of the nine allegations, found that the state had failed to prove the remaining five allegations, and entered a combined "judgment of jurisdiction" and "judgment of disposition" reflecting those findings. The state appeals, asserting that it proved by a preponderance of the evidence two of the latter allegations, relating, respectively, to injuries to the younger child's face, neck, and ear and to father's alleged failure to protect the younger child from physical abuse. On *de novo* review, ORS 419A.200, we conclude that the state proved those allegations and, accordingly, remand for entry of a modified judgment.

As pertinent here, in paragraph 8A-1 of its petition, SCF alleged that the younger child had been subjected to physical abuse by way of "severe bruising on his right thigh area, in the form of a handprint pattern"; according to that allegation, mother had admitted striking the child in that area and causing the injury. In paragraph 8A-2, SCF alleged that the younger child had been subjected to physical abuse by way of "severe bruising to the left side of his face, the left side of his neck and to his left outer ear. Expert medical opinion indicates that these injuries are a result of a non-accidental blunt physical blow to the left side of the child's face and head area." In paragraph 8B-1, SCF alleged that the older child was under a threat of harm "due to the * * * allegations of physical abuse to his [younger] brother[.]" In paragraph 8B-3, SCF alleged that mother and father had a history of involvement with the agency and that the children continued to be subjected to abuse despite that involvement and despite the parents' completion of services through SCF. In paragraph 8B-5, SCF alleged that father had a history of substance abuse that had "previously hindered his ability to adequately parent" and that he had recently relapsed and used marijuana. Finally, in paragraph 8B-6, it alleged that father

"ha[d] failed to adequately protect" the younger child "from the physical abuse."[1]

After a hearing, the trial court found jurisdiction of the children based on the allegations in paragraphs 8A-1, 8B-1, 8B-3 (as amended by the trial court),[2] and 8B-5. The state appeals from the trial court's finding that it lacked jurisdiction based on the allegations in paragraphs 8A-2 and 8B-6. The state contends that a preponderance of evidence in the record supports findings of jurisdiction on the bases alleged in those paragraphs.

█■   Before turning to the record to resolve that issue, we first consider whether the court's order is appealable by the state. ORS 419A.200(1) provides, in part, that "any person or entity * * * whose rights or duties are adversely affected by a final order of the juvenile court may appeal therefrom." It is clear that the state may appeal from an order dismissing a petition for jurisdiction under ORS 419B.100 on the ground that none of the allegations in the petition was proved. *See, e.g., State ex rel Juv. Dept. v. Parshall*, 177 Or App 520, 34 P3d 713 (2001); *State ex rel Juv. Dept. v. Brammer*, 133 Or App 544, 892 P2d 720, *rev den* 321 Or 268 (1995). We have not previously considered, however, whether the state may appeal an order in which the court establishes jurisdiction over a child based on some of the allegations in the petition but not others. Under that circumstance, the question is whether any "rights or duties" of the state are "adversely affected" by the court's order.

SCF asserts that its rights or duties were adversely affected by the trial court's failure to find jurisdiction based on the allegations in paragraphs 8A-2 and 8B-6 because the bases of the court's jurisdiction establish the scope of the court's authority to require a parent to engage in treatment or services, ORS 419B.387,[3] and because, under ORS

---

[1] In October 1999, the older child was approximately two years, three months old and the younger child was approximately one year, five months old.

[2] As pertinent hear, the trial court amended paragraph 8B-3 by limiting it to the younger child.

[3] ORS 419B.387 provides:

"If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that brought the child within

419B.343(1)(a),[4] SCF is required to ensure that its case planning in the case "bears a rational relationship to the jurisdictional findings that brought the child within the court's jurisdiction under ORS 419B.100." In particular, as to the latter constraint, SCF contended at oral argument that a finding of jurisdiction based on the allegation in paragraph 8B-6—relating to father's failure to protect the younger child from physical abuse—would permit it to provide services to father that it would not be authorized to provide on the basis of other jurisdictional findings made by the court that expressly pertained to father, namely, the finding that he and mother had a history of involvement with SCF and that the younger child nevertheless continued to be subject to abuse, as found by the court pursuant to paragraph 8B-3; and the finding that father had a history of substance abuse that hindered his ability to parent, as found pursuant to paragraph 8B-5. Mother and father responded at oral argument that the findings made by the trial court did not limit SCF's ability to provide appropriate services, for two reasons: because SCF generally has broad discretion to provide services and because, particularly as to the younger child's physical injuries, any services provided in relation to the younger child's facial-area injuries, as alleged in paragraph 8A-2, would be the same as those services provided in relation to the injuries to the child's thigh area, as found pursuant to paragraph 8A-1. Thus, mother and father argue that SCF was not "adversely affected" by the trial court's failure to find jurisdiction on the basis of paragraphs 8A-2 and 8B-6. ORS 419A200.

■      The plain meaning of the word "adverse" is "in opposition to one's interests : detrimental, unfavorable." *Webster's*

---

the jurisdiction of the court or to prepare the parent to resume the care of the child, the court may order the parent to participate in the treatment or training if the participation is in the child's best interests."

[1] ORS 419B.343 provides, in part:

"(1) To ensure effective planning for children, the State Office for Services to Children and Families shall take into consideration recommendations and information provided by the committing court before placement in any facility. The State Office for Services to Children and Families shall ensure that the case planning in any case:

"(a) For the reunification of the family bears a rational relationship to the jurisdictional findings that brought the child within the court's jurisdiction under ORS 419B.100[.]"

*Third New Int'l Dictionary*, 31 (unabridged ed 1993). To "affect" is "to act upon" or "to have a detrimental influence on." *Id.* at 35. Thus, a person's or entity's rights or duties are adversely affected when an action of the court is detrimental or unfavorable to those rights or duties. As pertinent here, this court previously has considered the application of the "rights or duties are adversely affected" standard established in ORS 419A.200 in the context of orders arising out of review hearings under ORS 419B.449.[5] In *State ex rel Juv. Dept. v. Nagle*, 36 Or App 237, 584 P2d 338 (1978), the father did not appeal the initial jurisdictional and dispositional order making his daughter a ward of the juvenile court.[6] He later appealed from an order arising out of a review hearing, in which the court continued his daughter's status as a ward of the court and her temporary commitment to Children's Services Division (CSD) (the predecessor agency to SCF). This court expressly declined to delineate the entire universe of appealable orders under the predecessor statute to ORS 419A.200. *Id.* at 240-41. It held, however, that an order continuing wardship is not appealable if it does not effect a "substantial change in the nature or degree of the conditions" of the wardship or a right or duty of a person was not "affected by a ruling on a motion[.]" *Id.* at 240. Finding that the order in that case did not cause either of those effects, the court dismissed the appeal. *Id. See also State ex rel Juv. Dept. v. Brown*, 175 Or App 1, 27 P3d 502, *rev den* 332 Or 558 (2001) (order that did not embody a ruling on any motion by the mother and did not substantially change the conditions of wardship established by the preceding order was not appealable); *State ex rel Juv. Dept. v. Vockrodt*, 147 Or App 4, 934 P2d 620 (1997) (order continuing the court's jurisdiction over, and SCF's custody of, the child was not appealable, because

---

[5] ORS 419B.449 provides for periodic hearings to review the "condition and circumstances" of a child over whom the juvenile court has established jurisdiction; in such a hearing, the court may determine whether it "should continue jurisdiction over the child or order modifications in the care, placement and supervision of the child."

[6] Under ORS 419B.328, a child found to be within the jurisdiction of the court may be made a ward of the court. The court's wardship continues until the court dismisses the petition or enters an order terminating the wardship, among other conditions. For the purposes of our analysis here, we regard juvenile court wardship as having the same significance as juvenile court jurisdiction.

the order did not change the conditions of the court's wardship over the child and the court's only ruling on a motion by the mother was in her favor).

By contrast, in *State ex rel Juv. Dept. v. Black*, 101 Or App 626, 792 P2d 1225 (1990), the juvenile court's initial dispositional order required that the father complete an incest offender treatment program. The father later sought relief from that requirement, asserting that CSD would accept only a treatment program that involved his admitting to abusing the child. *Id.* at 628. The juvenile court declined to make the modification that the father requested. This court held that, because the resulting order effectively denied the father's request for "affirmative relief," it was appealable. *Id.* at 629. Moreover, the court reached that conclusion despite the fact that, on the merits, it determined that the father was not entitled to any relief, because there was no evidence that CSD had required him to complete a treatment program demanding an admission of abuse. *Id.* at 629-31. *See also Brown*, 175 Or App at 9 (order denying the parents' specific request regarding placement of the children was appealable).

■ Consistently with the application of ORS 419A.200 in the cases described above, we conclude that, where SCF has sought a finding of jurisdiction based on a particular factual allegation, a denial of jurisdiction on that basis is a ruling that adversely affects SCF, regardless of whether the court nevertheless establishes jurisdiction based on other allegations in the petition. That is because the ruling constrains SCF's ability—its "duty"—to provide what, consistently with its allegations, it has identified as appropriate remedial services to the child and parents. ORS 419B.343(1)(a); *see also* ORS 409.185(5) (setting out duties of SCF in context of "substantiated cases of child abuse and neglect," including the provision of "remedial services").[7]

---

[7] In effect, SCF's "duty" to provide remedial services to parents and children over whom the juvenile court has established jurisdiction under ORS 419B.100 is the complement to the "right" of the parents and children to receive services that, if successful, will lead to reunification of the family. *Cf. State ex rel Juv. Dept. v. East*, 38 Or App 59, 589 P2d 744, *rev den* 286 Or 1 (1979) (for purposes of predecessor statute to ORS 419A.200, the decision in a termination of parental rights case was appealable by the state because it affected a "right" of the child, namely, an "opportunity to live with fit parents in a nurturing environment").

Thus, as here, where SCF sought jurisdiction on the basis of multiple allegations and the court established jurisdiction on the basis of some of the allegations but declined to establish jurisdiction on the basis of others, SCF may appeal the court's order in regard to the latter allegations.

As noted above, mother and father asserted that, in this case, SCF was authorized to provide essentially the same services to them pursuant to the jurisdictional bases found by the court as it would be authorized to provide if the trial court had found the additional bases of jurisdiction that are the subject of the state's appeal. In effect, mother and father suggest that, in the context of an order establishing jurisdiction on the basis of some but not all allegations in a petition, whether the rights or duties of the petitioning entity are adversely affected within the meaning of ORS 419A.200 is a question of fact. We decline to determine appealability on that basis, however. Rather, consistent with the cases discussed above, it is enough for appealability purposes in this context that SCF sought jurisdiction on the basis of one or more particular allegations as to which the juvenile court declined to establish jurisdiction; whether, on *de novo* review by this court, the evidence supports jurisdiction on the basis of the denied allegations goes to the merits, not to the appealability of the order denying them. *See Black,* 101 Or App at 626 (order denying father's request for modification of treatment requirements was appealable under predecessor statute to ORS 419A.200, regardless of the circumstance that, on the merits, the record did not demonstrate that father was entitled to any relief).

Having determined that the juvenile court's order in this case is appealable by the state under ORS 419A.200, we turn to those facts in the record that are relevant to the allegations at issue. Again, in paragraph 8A-2, SCF alleged that the younger child had been subjected to physical abuse by way of "severe bruising to the left side of his face, the left side of his neck and to his left outer ear. Expert medical opinion indicates that these injuries are a result of a non-accidental blunt physical blow to the left side of the child's face and head area." In paragraph 8B-6, it alleged that father "has failed to

adequately protect" the younger child "from the physical abuse."

At the December 1999 hearing, SCF protective services worker Toddy testified that, in late October 1999, SCF was contacted by the children's day care providers, who reported that the younger child had a number of bruises, including a "particularly concerning" bruise on his "bottom." After viewing the child and taking photographs of the bruises, Toddy separately interviewed mother and father. Mother admitted spanking the younger child and admitted that she probably had caused the bruises on his thigh area, but denied causing any of the other bruises. Instead, she believed that they were caused by the older child, whom she described to Toddy as aggressive and hurtful toward the younger child. Mother also told Toddy that the younger child had fallen on some cement steps and that he was accident prone. Father told Toddy that he had noticed some bruising on the younger child's face but had not noticed any other injuries and was unaware of how the injuries had occurred. He also stated that he thought that the older child had caused some of the injuries and that the bruises to the child's face occurred when he tripped on the stairs. Father told Toddy that he was unaware that mother had spanked the children and that, due to his work schedule, "he did not have much opportunity to know what was going on in the home." Toddy also testified that the children's current foster parent had stated that the older child was "a little aggressive" but that the foster parent had never witnessed him injuring or harming the younger child.

SCF permanent planning worker Johnson testified at the hearing that she had worked with mother and father since an earlier referral in November 1998, that the children had been returned to mother and father in July 1999, and that they came back into substitute care in October 1999. Johnson testified that mother had admitted to spanking the younger child on his bottom and to spanking him one or two other times, but had denied striking his face or other parts of his body. Johnson also testified that she had no evidence that father had injured the child. Johnson testified that, since the children were placed in substitute care in October 1999, she

had seen the children four or five times and that she not seen any marks or bruises on the younger child.

The children's maternal grandmother, Holloway, testified that, from the time the children were returned to the parents in July 1999 until they were removed in October 1999, she saw them almost every day, including some week-end days. She testified that she had seen scratches and "a little bruise" on the younger child and that, in her opinion, they were caused by the older child, whom she had observed pushing the younger child down, taking things away from him, and biting him. She also testified that the younger child "had trouble walking * * * so he did fall a lot." Holloway stated that she had never seen father physically abuse the children and that she had never seen mother strike the children or "roughly handle" them.

Mother's friend, Lampe, testified that she had seen bruises and scratches on the younger child and bruises on the older child but that she had never seen "hand prints" on them. Lampe testified that the children "play[ed] rough" with each other, that the older child was "more aggressive," including "[p]ushing, shoving, pulling, biting," and that the younger child "was always getting the receiving end of it." She also testified that the younger child fell down a lot. Lampe testified that, although she had heard mother yell at the children, she had never seen mother hit either child.

Mother testified that a bruise on the younger child's cheek resulted from a fall on some steps, that scratches on his face and a split lip resulted from falling or from conduct of the older child, and that bruises on his thigh area resulted from her spanking him. She testified that she had spanked him in that area "[m]aybe twice"; she denied hitting him in the face. Mother stated that the older child bit the younger child, threw objects at him, hit him with objects, pushed him down, and scratched him. She testified that, during visits with the children after they were placed in substitute care in October 1999, she noticed bruises on the younger child's knees, a split lip, and a mark on his eye that she believed were caused by the older child.

Father testified, in effect, that the older child was jealous of the younger child and that the older child would

"physically throw [the younger child] down," kick him, and bite him. Father said that when that occurred, he would impose a "time-out" on the children or take one of them out of the house. He also testified that he and mother "talked to" the older child and tried to help him understand that the younger child was his brother. He stated that he had never seen mother hit the children and that, until she stated that she had done so, he did not believe that she had. He testified that he had seen the bruises and scratches on the younger child's face but not those on his hip area. Father said that he was able to spend "little" time with the children.

The children's former foster parent testified that she took care of them before their return to mother and father in July 1999, that the older child was very jealous regarding his father, and that he bit and scratched the younger child and threw toys at him, as well as bit other foster children in her care, resulting on some occasions in broken skin and bleeding.

The children's physician, Dr. Zwartverwer, testified at the hearing that he examined the younger child in October 1999 and that the child had a "multitude of sores on his head and face, some of which looked like scratches and some [of] which were bruises." Zwartverwer testified that a bruise on the child's left "mid-face" area appeared to be "consistent with a blow of some sort" and that, if he placed his hand on the child's face, the bruises on the left edge of child's chin, his neck, and his left ear corresponded with the doctor's thumb and fingers. He stated that he thought that the bruising on the child's face was "consistent with" an "adult hand."

The juvenile court made no credibility findings as to any witness's testimony. Having reviewed the record *de novo*, we conclude that the state proved, by a preponderance of the evidence, the allegations in paragraph 8A-2 of the petition: that the younger child had been subjected to physical abuse by way of "severe bruising to the left side of his face, the left side of his neck and to his left outer ear. Expert medical opinion indicates that these injuries are a result of a non-accidental blunt physical blow to the left side of the child's face and head area." It is undisputed that the child had those injuries, as evidenced in the photographs. Although there is evidence

44

in the record that some of the injuries may have been the result of accidental falls, preponderant evidence indicates that many, if not most, of the injuries to the child's face, neck, and ear were the result of nonaccidental occurrences, including evidence that some of the bruises were consistent with marks caused by a blow from an adult hand and evidence that the child had been hit, scratched, and bitten by the older child. In addition, although mother testified to the contrary, it is significant that SCF permanent planning worker Johnson testified that, after the children were placed in substitute care in October 1999, she had seen the children four or five times and that she not seen any marks or bruises on the younger child. Preponderant evidence demonstrates that the younger child was subjected to nonaccidental physical abuse resulting in injuries to his face, neck, and ear.

■ We also conclude that the state proved by a preponderance of the evidence that father "ha[d] failed to adequately protect" the younger child "from the physical abuse," as alleged in paragraph 8B-6. Mother admitted to striking the child on his thigh area with sufficient force to cause bruising. In addition, we have concluded above that a preponderance of evidence demonstrates that the younger child had suffered nonaccidental injuries to his face, neck, and ear. Father testified that, when the older child acted aggressively toward the younger child, he took various measures such as imposing a "time-out" on the children, taking one of them out of the house, or talking to the older child. However, father also testified that he was unaware that mother had hit the younger child and that he was unaware of the bruises on the younger child's thigh. Again, it is significant that SCF worker Johnson did not see marks or bruises on the younger child after the children were removed from mother's and father's care. On balance, the state proved by a preponderance of the evidence that, whether through lack of awareness of the abuse or its causes, lack of effective prevention of the abuse, or for some other reason, father had failed to protect the younger child from physical abuse.

Remanded for entry of a modified judgment of jurisdiction and disposition, including findings that the children

are within the jurisdiction of the juvenile court on the basis of the allegations in paragraphs 8A-2 and 8B-6 of the petition for jurisdiction.