Argued and submitted November 21, 2002, appeal dismissed April 3, 2003

In the Matter of
Alexander Ortiz, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
of WASHINGTON COUNTY,
*Respondent,*

*v.*

ALEXANDER ORTIZ,
*Appellant.*

J97-0019; A115698

65 P3d 1118

Daniel A. Cross argued the cause for appellant. With him on the brief was Cross & Lurtz. Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

DEITS, C. J.

## DEITS, C. J.

The juvenile court placed youth in the legal custody of the Oregon Youth Authority (OYA) for a specified period and recommended placement in a youth correction facility. ORS 419C.478; ORS 419C.495; ORS 419C.501. Several months later, youth moved to amend the order on the ground that he was entitled to credit against the period of placement in a youth correction facility for time previously spent in other out-of-home placements. The juvenile court denied the motion, and youth appeals. The state has moved for dismissal of the appeal on the ground that, under ORS 419A.200,[1] the order denying youth's motion is not appealable. We agree with the state and therefore dismiss youth's appeal.

The following facts are not in dispute. In April 1997, youth was found to be within the jurisdiction of the juvenile court for having committed an act that, if committed by an adult, would constitute sexual abuse in the third degree. ORS 419C.005; ORS 163.415. The juvenile court placed youth on probation. ORS 419C.446. In March 1998, youth was found to have violated the terms of his probation; the juvenile court continued his probation and placed him in the legal custody of OYA for an indefinite period, ORS 419C.478; it did not recommend commitment to a youth correction facility. In March 1999, the juvenile court again found that youth had violated his probation and also that he had committed acts that would constitute theft in the second degree and harassment. ORS 164.045; ORS 166.065. The court again continued probation and continued youth's placement in the legal custody of OYA for an indefinite period; the court also recommended placement in a youth correction facility, ORS 419C.495, but suspended the recommendation "pending good behavior on probation." In November 2000, based on youth's termination

---

[1] ORS 419A.200 provides, in part:

"(1) * * * [A]ny person or entity, including, but not limited to, a party to a juvenile court proceeding under ORS 419B.875(1) [setting out parties to juvenile court dependency and termination proceedings] or 419C.285(1) [setting out parties to juvenile court delinquency proceedings], whose rights or duties are adversely affected by a judgment of the juvenile court may appeal therefrom. An appeal from a circuit court shall be taken to the Court of Appeals * * *."

from a treatment program in which OYA had placed him, the juvenile court revoked youth's probation, placed him in the legal custody of OYA for a period not to exceed two years and six months, and recommended that he be placed in a youth correction facility. Youth did not appeal from that order.

In May 2001, youth filed a "Motion to Amend Order of Commitment," seeking "credit" toward the two-and-one-half-year placement imposed in the November 2000 order for 566 days spent in out-of-home placements before his probation was revoked. On July 3, 2001, reasoning that those earlier placements had been neither institutionalizations nor commitments for the purposes of ORS 419C.501, the juvenile court denied the motion. Youth appeals, again arguing that the out-of-home placements were commitments for the purposes of ORS 419C.501.

As noted, the state has moved to dismiss youth's appeal, arguing that the juvenile court's July 2001 order is not appealable under ORS 419A.200.[2] Specifically, the state acknowledges that, under ORS 419C.610,[3] a party may request, and a court may grant, modification of any previously issued order. It asserts, however, that that statute provides no basis for appeal of a trial court's "refusal" to modify an order. The state contends that, instead, appeal of juvenile court orders is controlled by ORS 419A.200 and that, consistently with that statute as applied in *State ex rel Juv. Dept. v. Brown*, 175 Or App 1, 27 P3d 502, *rev den*, 332 Or 558 (2001), *State ex rel Juv. Dept. v. Vockrodt*, 147 Or App 4, 934 P2d 620 (1997), and *State ex rel Juv. Dept. v. Nagle*, 36 Or App 237, 584 P2d 338 (1978), youth was not "adversely affected" by the juvenile court's May 2001 order because that order did not effect a substantial change to the court's previous order.

The state also contends that this case is not like *State ex rel Juv. Dept. v. Black*, 101 Or App 626, 792 P2d 1225 (1990). In *Black*, a juvenile dependency case, the juvenile

---

[2] This court deferred its ruling on the state's motion until after briefing and oral argument.

[3] ORS 419C.610 provides, in part:

"(1) Except as provided in ORS 419C.613, 419C.615 and 419C.616, the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct."

court denied a father's request for relief from the requirement, made in an earlier dispositional order, that the father complete an incest offender treatment program. The father moved for relief from that requirement on the ground that Children's Services Division (CSD) would accept only a treatment program that involved his admitting to abusing the child. We noted that, in *Nagle*, we had determined that an order of the juvenile court was not appealable, because the order

> " 'merely continues the existing placement under the wardship. * * * It makes no new or additional disposition. No authority is granted to CSD as custodian that had not been granted in the initial order. No right of the appellant is diminished; no duty enlarged. No motion of any party is granted or denied. Had there been no order, the status of the wardship would be no different. Therefore, there is no legal event with appellate significance. There was merely a supervisory look at an ongoing wardship with no substantial change ordered.' "

*Black*, 101 Or App at 629 (quoting *Nagle*, 36 Or App at 240) (emphasis in *Black* deleted). Nevertheless, in *Black*, we held that the order denying the father's motion for relief was appealable:

> "This case is different [from *Nagle*], because father sought and was denied affirmative relief. Although he made no formal motion, he apparently requested the hearing, and he asked the court to modify the original dispositional order to state expressly that he need not complete an incest treatment program, unless it was one that did not require him to confess to a crime. The court's order effectively denied father's request for a modification. Accordingly, *Nagle* does not require dismissal. The order is appealable * * *."

*Black*, 101 Or App at 629.

Here, the state argues that, unlike the father in *Black*—who, at the time of the original disposition order, apparently had no reason to know of CSD's requirements relating to treatment programs—youth in this case was aware at the time of the original order of the "conditions" he challenged in his motion to modify, namely, the duration of the period of "institutionalization or commitment" that the

court was imposing and the fact that youth previously had spent 566 days in residential treatment facilities.

In response to the state's motion to dismiss his appeal, youth argues that he was "adversely affected" within the meaning of ORS 419A.200 by the denial of his motion, because the effect of the court's denial was to require him to serve an additional 566 days beyond what he contended was authorized under ORS 419C.478, ORS 419C.495, and ORS 419C.501. He also argues that his motion for modification amounted to an "affirmative request for relief," similar to the one that this court determined was appealable in *Black*. As pertinent to that argument, youth argues that OYA erred in failing to deduct from his commitment term the time that he previously was committed to other out-of-home placements by that agency.

On the merits, relying on *State ex rel Juv. Dept. v. Bruns*, 71 Or App 573, 692 P2d 649 (1984), and *State ex rel Juv. Dept. v. Chapter*, 68 Or App 110, 681 P2d 1171 (1984), and on the requirement in ORS 419C.478(4) that juvenile courts use "uniform commitment blanks" when placing youths in the legal custody of OYA, youth argues that a "commitment" to the legal custody of OYA under ORS 419C.478 is a commitment for the purpose of the durational limitations expressed in ORS 419C.501, regardless of whether the commitment includes a recommendation for placement in a youth correction facility. The state responds that, notwithstanding the use of the term "commitment" in other provisions of ORS chapter 419C, such as ORS 419C.478(4) and ORS 419C.478(5) (pertaining to placements in residential facilities), the phrase "institutionalization or commitment" in ORS 419C.501 does not mean mere placement in OYA legal custody or placement in a residential facility. It argues that, instead, consistently with the text of ORS 419C.501 and with *State ex rel Juv. Dept. v. Rial*, 181 Or App 249, 258 n 4, 46 P3d 217 (2002), and *State ex rel Juv. Dept. v. Johnson*, 168 Or App 81, 7 P3d 529 (2000), the phrase "institutionalization or commitment" means only placements in incarcerative or secure custody institutions, such as a youth correction facility.

We need not resolve the question whether youth's previous placement in the legal custody of OYA under ORS

419C.478 constituted a commitment for the purposes of the durational limitations on periods of "institutionalization or commitment" set out in ORS 419C.501 because, for the following reasons, we conclude that the court's May 2001 order denying youth's motion to amend the court's November 2000 dispositional order is not appealable.

No Oregon appellate court decision has addressed the application of ORS 419A.200 or its predecessor statute, *former* ORS 419.561(1), *repealed by* Or Laws 1993, ch 33, § 373, in the context at issue here, involving an order denying a youth's motion to modify a previous dispositional order in a juvenile delinquency case. However, cases applying the current and former statute in other juvenile code contexts shed light on its proper application in this case.[4] As do the parties, we examine those cases, beginning with *Nagle*.

In *Nagle*, the juvenile court assumed wardship over the child and committed her to the temporary custody of CSD for "care, placement, and supervision" in May 1977. *Nagle*, 36 Or App at 239. The court also scheduled a review hearing, which was held in October 1977 and which resulted in an order continuing the wardship and temporary commitment to CSD and providing visitation rights for the father. *Id.* The father appealed from the latter order. As previously noted, this court determined that the October 1977 order was not appealable because it "merely continue[d] the existing placement under the wardship," made "no new or additional disposition," did not grant any new authority to the custodial agency, did not "diminish[ ]" any right or "enlarge[ ]" any duty of the appellant, and did not grant or deny any motion of any party. *Id.* at 240. We held generally that an order is not appealable "where there is no substantial change in the nature or degree of the conditions relating to the wardship" and where a right or duty of a party is not affected by a ruling on a motion. *Id.* at 241.

---

[4] In *State ex rel Juv. Dept. v. Vockrodt*, 147 Or App 4, 7, 934 P2d 620 (1997), this court noted that the appealability standard set out in *former* ORS 419.561(1) and ORS 419A.200 are the same and that cases interpreting the former statute therefore remain relevant.

Similarly, in *Vockrodt*, the court found the child to be within its jurisdiction and placed the child in the legal custody of the State Office for Services to Children and Families (SCF) in February 1993. The court later scheduled a review hearing for November 1995. At the hearing, the mother moved for a hearing on the issue of whether reasonable efforts had been made to return the child home. The court granted the mother's request for a hearing, at which the mother presented testimony and argument to the effect that reasonable efforts had not been made to continue therapy for the child. The court issued an order continuing its jurisdiction, determining that reasonable efforts had been made, continuing the child in therapy, and continuing SCF's custody of the child. 147 Or App at 6. We held that the order was not appealable, because it did not substantially change the conditions of the court's wardship over the child but merely continued the wardship and its conditions "as they had been previously in effect." *Id.* at 7-8. In addition, where the mother had received the requested hearing on the reasonable efforts issue and the court granted her request to continue the child in therapy, we held that the mother's rights and duties were not adversely affected. *Id.* at 8.

In a slightly different context, in *State ex rel SOSCF v. Williams*, 168 Or App 538, 7 P3d 655 (2000), *rev dismissed*, 333 Or 596 (2002), after the parents' rights were terminated, the juvenile court ordered SCF to provide the children's attorney with access to adoptive home studies. This court explained that the order did not make a substantial change in the conditions relating to the court's wardship over the children but that it nevertheless was appealable, because it could adversely affect SCF's duty under applicable statutes and rules to maintain the confidentiality of information contained in the studies. *Id.* at 542-43.

Next, in *Brown*, we held that the court's order following a February 1999 review hearing was not appealable because it did not change the conditions of the court's wardship that had been established in the court's December 1998 order, in which the court had directed SCF to undertake permanent planning for the children. 175 Or App at 7-8. However, we also held that another order of the court, issued in September 1999, *was* appealable, because it was the court's

"first order that ruled against [the parents'] request for placement of the children with relatives." *Id.* at 8; *see also State ex rel Juv. Dept. v. V.*, 62 Or App 293, 295 n 1, 660 P2d 707 (1983) (after CSD declined to consent to the children's adoption by their foster parents, the children moved to vacate their permanent commitment to CSD; the order denying the children's motion to vacate permanent commitment to CSD and continuing the commitment was a final and "reviewable" order under *former* ORS 419.561(1) because it "dispose[d] of the children's motion and affect[ed] their right to live with fit parents in a nurturing environment" (internal quotation marks omitted)).

Finally, in *State ex rel SOSCF v. Imus*, 179 Or App 33, 39 P3d 213 (2002), SCF appealed the juvenile court's order finding the parents and children to be within the court's dependency jurisdiction based on some, but not all, of the allegations in the state's petition. In determining whether the court's order was appealable by SCF, we explained that the plain meaning of the phrase "rights or duties are adversely affected" in ORS 419A.200 indicates that an order of the juvenile court is appealable "when an action of the court is detrimental or unfavorable to those rights or duties." *Id.* at 38. We also explained that, in previous cases applying ORS 419A.200, including *Nagle*, *Vockrodt*, and *Brown*, we had established that, to meet that standard, an order must effect a "substantial change in the nature or degree" of the conditions established by a previous order of the juvenile court or must affect the rights or duties of a person by a ruling on a motion. *Imus*, 179 Or App at 38-39. We concluded that the order met that standard, because it constrained SCF's statutory duty to provide appropriate remedial services to the family. *Id.* at 39.

We apply those principles and precedents to the circumstances presented here. Again, in November 2000, the court revoked youth's probation, committed him to the legal custody of OYA for a period not to exceed two years and six months, and recommended that he be placed in a youth correction facility. In July 2001, the court denied youth's motion to amend that order, finding, as a matter of law, that youth

was not entitled to credit toward that placement for his previous out-of-home placements.

We conclude that the court's order, in effect, merely retained or continued all of the incidents or "conditions" of its previous disposition, including the duration of OYA custody, the recommendation for placement in a youth correction facility, and the effect (or lack of effect) of his previous placements. In addition, the court's order did not make any "new or additional" disposition in regard to youth, or grant any "new authority" to the custodial agency, OYA. *See Nagle*, 36 Or App at 240 (applying those standards). For those reasons, we hold that the order did not effect a substantial change in the conditions of the court's disposition.

We also conclude that the order did not "diminish" any right of youth—such as the right to serve no more than a lawful period of commitment or institutionalization—beyond what was accomplished in the court's earlier order. Conversely, it did not "enlarge" any duty of OYA beyond the duty imposed in the court's earlier order, such as by requiring OYA to retain custody of youth for a longer period of time or by requiring it to account, one way or the other, for youth's previous placements. *See Nagle*, 36 Or App at 240 (applying those standards). Accordingly, the order did not adversely affect the rights or duties of any party.

A question remains whether the mere fact that the court ruled on a motion by youth is enough to create an appealable order. *See Nagle*, 36 Or App at 240 (order in that case was not appealable because "[n]o motion of any party is granted or denied"). We think not. Again, in *Brown*, we held that the court's September 1999 order was appealable because it "was the court's *first* order that ruled against [the parents'] request for placement of the children with relatives." 175 Or App at 8 (emphasis added). Similarly, in *State ex rel Juv. Dept. v. V.*, 62 Or App at 295-96, the issue on which the court ruled—the vacation or continuation of the children's permanent commitment to CSD—apparently was raised only after CSD refused to consent to the children's preferred adoptive placement. By contrast, here, youth's motion, in effect, requested that the court revisit the issue of the

duration of his placement with OYA for placement in a youth correction facility. That issue—implicitly including any question of whether he was entitled to credit against that placement for time during which he previously was placed in facilities other than a youth correction facility—was before the court at the time that it originally revoked youth's probation and recommended a secure confinement placement.

Finally, as noted above, youth also argues that OYA failed to grant him credit toward his 30-month placement in a youth correction facility for time previously spent in other placements and that, where youth had no knowledge at the time the court initially recommended placement in a youth correction facility that OYA would fail to give him credit for that time, he could not have raised the issue of the proper computation of his placement at that time. We therefore consider whether, analogously to the appealable order in *Black*—in which the court denied the father "relief" from CSD's apparently later-recognized requirement relating to sex offender treatment programs—the juvenile court's order in this case is appealable as an order denying youth's request for "affirmative relief" from that action of OYA.

Again, the answer must be that it is not. Youth points to no statute or rule that authorizes, much less requires, OYA to grant credit for previous out-of-home placements upon revocation of a youth's probation and placement of the youth in a youth correction facility. *Cf.* ORS 137.372(1) and (2) (in context of adult offenders who are revoked from probation and sentenced to an incarceration term, authorizing *sentencing court*, in its discretion, to grant or deny credit toward the incarceration term for time served "in jail" before commencement of the incarceration term). Indeed, youth's motion itself contemplates that the court, not OYA, is the entity that accounts for such time in its dispositional order. Again, that issue was encompassed within the court's November 2000 dispositional order, and the court's denial of youth's later motion that the court amend the order to account for that time had the effect of merely continuing the court's previous disposition.

In summary, the order from which youth appeals did not effect a substantial change in the nature or degree of the

conditions established in the court's previous order and did not affect the rights or duties of a party by a ruling on a motion. ORS 419A.200; *Imus*, 179 Or App 33; *Nagle*, 36 Or App 237. For all of the above reasons, we hold that the order is not appealable.[5]

Appeal dismissed.

---

[5] We need not consider, and do not decide, whether any other remedy is available to youth based on his assertions regarding the proper duration of his placement in a youth correction facility.