[Cite as *In re T.C.*, 2019-Ohio-2287.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| T.C., JR., ABUSED, NEGLECTED AND DEPENDANT CHILD | : | **CASE NO. 2018-A-0090** |

Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, Case No. 2017 JC 00172.

Judgment:  Affirmed as modified.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Ashtabula County Children Services Board).

*David E. Koerner*, Law Office of David E. Koerner, 5900 SOM Center Road, Suite 12-146, Willoughby, OH  44094 (For Terrance Clark, Sr.).

*Carmen Marie Hamper*, P.O. Box 2834, Ashtabula, OH  44005 (Guardian ad litem).

MARY JANE TRAPP, J.

{¶1}     Appellant, Terrance Clark, Sr. ("Mr. Clark"), appeals the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, granting legal custody of his son, T.C., to a third party and dismissing his motion for legal custody for failure to prosecute.

**{¶2}** We find: (1) the trial court did not abuse its discretion by dismissing Mr. Clark's motion for legal custody for failure to prosecute, but the dismissal should have been without prejudice; (2) the trial court was not legally required to determine Mr. Clark's unsuitability at the evidentiary hearing on the competing motions for legal custody; (3) the trial court did not abuse its discretion by accepting evidentiary stipulations from Mr. Clark's counsel; and (4) the trial court's granting of legal custody of T.C. to a third party was not against the manifest weight of the evidence.

**{¶3}** For the reasons that follow, we modify the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, to state that the dismissal of Mr. Clark's motion is without prejudice and affirm as modified.

### Substantive History and Procedural Background

**{¶4}** On August 28, 2017, the trial court granted ex parte emergency temporary custody of T.C. to the Ashtabula County Children Services Board ("ACCSB") due to T.C. being in immediate danger from his surroundings.

**{¶5}** On August 30, 2017, ACCSB filed a verified complaint for temporary custody alleging T.C. was an abused, neglected, and dependent child. Specifically, ACCSB alleged that the Ashtabula County Sheriff's Department responded to a call regarding theft of a wallet by T.C.'s mother, Gloria Fortney ("Ms. Fortney"). Upon arrival at her residence in Ashtabula, Ohio, the deputies observed a tray of drug paraphernalia, including pills, white powder, foil, razor blades, and other unknown substances on the floor next to the baby's bassinet. Deputies reported that Ms. Fortney and the maternal grandparents were out of control and screaming and that Ms. Fortney picked up T.C. and ran around the house with him in one arm, screaming at them.

2

{¶6}    ACCSB responded to the scene and observed the drugs and paraphernalia next to the bassinet.   ACCSB determined that Ms. Fortney and the grandparents appeared unable to care for T.C. safely at that time and no appropriate relatives were identified.

{¶7}    According to the complaint, ACCSB had just "closed the case" due to Ms. Fortney's noncompliance.  T.C. had spent two weeks in the hospital due to withdrawal, and Ms. Fortney never entered substance abuse treatment or complied with requested drugs screens or services.

{¶8}    The magistrate held a shelter care hearing on August 30, 2017.  Ms. Fortney appeared with counsel and stipulated to a finding of probable cause.  T.C.'s father, Mr. Clark, was incarcerated and unavailable.   The magistrate appointed counsel for Ms. Fortney, appointed a guardian ad litem ("GAL"), and ordered ACCSB to continue temporary custody of T.C.

{¶9}    The magistrate held an adjudicatory hearing on September 26, 2017.  Mr. Clark appeared, and the magistrate appointed counsel for him.   Ms. Fortney also appeared with counsel.  Mr. Clark and Ms. Fortney stipulated to a finding of dependency, and ACCSB moved to dismiss the allegations of abuse and neglect.   The magistrate ordered ACCSB to continue temporary custody of T.C.

{¶10}  The magistrate held a disposition hearing on October 23, 2017.  Mr. Clark and Ms. Fortney both appeared and were represented by counsel.   The evidence presented indicated as follows:  (1) The case plan required Ms. Fortney and Mr. Clark to demonstrate sobriety and to address any identified mental health needs.  The case plan further required Ms. Fortney to demonstrate an ability to parent, including completion of a parenting class, and to obtain stable housing; (2) Ms. Fortney had begun working toward

3

stabilizing her housing situation and engaging in mental health and substance abuse services; (3) Mr. Clark completed an assessment and was waiting for the beginning of counseling for anger management and parenting. He had been paying child support and was hoping to gain placement of T.C. Mr. Clark was on parole with anticipated successful completion by March of 2018; and (4) T.C. was in the care of Ms. Fortney's cousin and was doing well. The parents had engaged in supervised visits.

{¶11} The GAL recommended that ACCSB continue temporary custody of T.C.

{¶12} The magistrate determined T.C.'s continued residence in or return to the home would be contrary to his best interest and welfare and ordered ACCSB to continue temporary custody of T.C.

{¶13} The trial court subsequently adopted the magistrate's decisions regarding adjudication and disposition.

{¶14} On March 26, 2018, ACCSB filed a motion to terminate temporary custody and grant legal custody to a Dawn Rife ("Ms. Rife"), a third party. According to the affidavit in support of ACCSB's motion, Ms. Fortney showed little to no effort in working toward the case plan goals. While Mr. Clark had completed counseling and anger management classes and maintained a stable place of residence, there were eight police reports of possible domestic violence instances involving Mr. Clark and Ms. Fortney between November, 2017 and March, 2018.

{¶15} On March 29, 2018, Mr. Clark filed his own motion for legal custody. Mr. Clark asserted that he was not involved in the activities that led to the proceedings, he had stable housing and steady income, and he had completed his case plan. He further asserted that the eight calls to police regarding "domestic situations" with Ms. Fortney did not result in any arrests or convictions.

4

{¶16} The trial court held an evidentiary hearing on these motions on October 4, 2018. Ms. Fortney did not appear, although her counsel was present.

{¶17} Mr. Clark was present at court prior to the hearing. His counsel attempted to discuss with him the results of his drug screens. According to Mr. Clark's counsel, Mr. Clark said, "I'm done," pulled out his phone, called for a cab, and left.

{¶18} At the hearing, ACCSB moved for dismissal of Mr. Clark's motion for failure to prosecute based on Mr. Clark's sudden departure. Mr. Clark's counsel indicated he was not prepared to move forward on the motion due to the absence of his witness. Therefore, the trial court dismissed Mr. Clark's motion for failure to prosecute.

{¶19} ACCSB offered five exhibits into evidence as stipulations, including (1) a drug screen result from April of 2018 showing that Mr. Clark tested positive for THC, (2) a drug screen result from May of 2018 showing that Mr. Clark tested positive for amphetamine, methamphetamine, and THC, (3) a drug screen result from August of 2018 showing that Mr. Clark tested positive for methamphetamine, (4) a judgment entry of guilty plea and sentence in which Mr. Clark was convicted of having weapons while under disability in 2015, and (5) a judgment entry of plea and sentencing in which Mr. Clark was convicted of possession of cocaine and resisting arrest in 2015. Mr. Clark's counsel stated on the record, "We have reviewed those, and no objection to the admission of these exhibits."

{¶20} Terri Jo Mickle, a caseworker from ACCSB, was ACCSB's sole witness at the evidentiary hearing. She testified that her agency became involved with T.C. after receiving a referral with concerns from the pediatrician that Ms. Fortney was not following through with visits, that she had a history of substance use, and that she may have been

5

using again. Ms. Mickle also testified that Mr. Clark's positive drug screen results and prior convictions influenced her recommendation regarding legal custody of T.C.

{¶21} Ms. Mickle further testified that Ms. Rife was in the best position to assume legal custody of T.C. because she had been with him for a over a year and had been able to meet all his needs on a daily basis. With respect to Ms. Fortney, Ms. Mickle testified that she had not accomplished any of the terms of her case plan.

{¶22} The trial court took judicial notice of the GAL's previously-filed report. With respect to Mr. Clark, the GAL reported that he had: (1) a history of marijuana use, had prior charges for trafficking in cocaine, and was recently incarcerated on a parole violation after being charged with domestic violence against Ms. Fortney, (2) had positive drug screen results and had refused a drug screen, (3) had received counseling services, kept most appointments, seemed to be working hard on his anger issues, and had completed an anger management class, and (4) had stable housing, was not employed, but received some social security income.

{¶23} With respect to Ms. Fortney, the GAL reported that she (1) had positive drug screen results and refused a drug screen, (2) was receiving counseling services but participated sporadically, and (3) resided with her parents, who had a history of drug abuse.

{¶24} The GAL reported that Mr. Clark and Ms. Fortney denied being in a relationship, but there continued to be conflict between them, as evidenced by six police reports of disputes.

{¶25} Regarding visits with T.C., the GAL reported that both parents did not seem to understand how to address T.C. needs and had to be prompted to feed him or check his diaper. They were also inconsistent with their visits.

6

{¶26} The GAL recommended that the trial court grant ACCSB's motion and deny Mr. Clark's motion.

{¶27} Following the evidentiary hearing, the trial court issued a judgment entry dismissing Mr. Clark's motion for legal custody for failure to prosecute and granting legal custody of T.C. to Ms. Rife.

{¶28} Mr. Clark now appeals, asserting the following three assignments of error:

{¶29} "[1.] The trial court erred by dismissing father's motion for legal custody for failure to prosecute in violation of Civ.R. 41(B).

{¶30} "[2.] The trial court erred in finding that ACCSB's motion for legal custody should be granted.

{¶31} "[3.] The trial court erred by accepting father's attorney's stipulation to admit drug tests and convictions."

### Dismissal of Mr. Clark's Motion

{¶32} In his first assignment of error, Mr. Clark asserts that the trial court erred by dismissing his motion for legal custody for failure to prosecute.

### *Jurisdiction*

{¶33} We must first determine whether the trial court's dismissal constitutes a final appealable order.

{¶34} For purposes of Civ.R. 41, a dismissal with prejudice is "on the merits," while a dismissal without prejudice is "otherwise than on the merits." *Grippi v. Cantagallo*, 11th Dist. Ashtabula No. 2011-A-0054, 2012-Ohio-5589, ¶7. A dismissal for failure to prosecute "operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies." Civ.R. 41(B)(3). A dismissal with prejudice is a final

7

appealable order. *Tower City Properties v. Cuyahoga County Bd. of Revision*, 49 Ohio St.3d 67, 69 (1990).

**{¶35}** In this case, the trial court's judgment entry did not specify whether its dismissal of Mr. Clark's motion was with or without prejudice. Thus, pursuant to Civ.R. 41(B)(3), the trial court's dismissal was with prejudice. *Boulder Creek Assocs. v. Fechko Excavating, Inc.*, 11th Dist. Portage Nos. 2012-P-0143 & 2012-P-0157, 2013-Ohio-3394, ¶14. Accordingly, the trial court's entry of dismissal constitutes a final appealable order.

### *Standard of Review*

**{¶36}** The decision to dismiss for failure to prosecute is within the sound discretion of the trial court, and an appellate court's review of such a dismissal is confined solely to the question of whether the trial court abused its discretion. *Jones v. Hartranft*, 78 Ohio St.3d 368, 371 (1997), citing *Pembaur v. Leis*, 1 Ohio St.3d 89, 91 (1982). An abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). However, appellate "abuse of discretion" review is heightened when reviewing decisions that forever deny a review of a claim's merits. *Jones* at 372.

### *Notice*

**{¶37}** Mr. Clark first argues that the trial court erred by not providing him notice under Civ.R. 41(B)(1) or the opportunity to explain why he failed to appear at the evidentiary hearing. We disagree.

**{¶38}** Civ.R. 41(B)(1) provides that "[w]here the plaintiff fails to prosecute, * * * the court upon motion of a defendant or on its own motion may, *after notice to the plaintiff's counsel*, dismiss an action or claim." (Emphasis added.)

8

**{¶39}** The purpose of notice under Civ.R. 41(B) is to "provide the party in default an opportunity to explain the default or to correct it, or to explain why the case should not be dismissed with prejudice." *Logsdon v. Nichols*, 72 Ohio St.3d 124, 128 (1995), quoting McCormac, *Ohio Civil Rules Practice*, Section 13.07, at 357 (2d Ed.1992). The notice requirement of Civ.R. 41(B)(1) is satisfied when counsel has been informed that dismissal is a possibility and has had a reasonable opportunity to defend against dismissal. *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46 (1997), syllabus.

**{¶40}** In this case, Mr. Clark was present at court prior to the evidentiary hearing but left before it began. ACCSB moved for dismissal of Mr. Clark's motion for legal custody, arguing his sudden departure "evidenced an intent not to proceed on his motion." Mr. Clark's counsel confirmed Mr. Clark's sudden departure and indicated he was not prepared to move forward on Mr. Clark's motion. The trial court therefore dismissed Mr. Clark's motion.

**{¶41}** The record reflects that the notice requirement under Civ.R. 41(B)(1) was satisfied. As the rule specifically indicates, the trial court must provide notice to "counsel." There is no requirement that a party also receive formal notice.

**{¶42}** Mr. Clark's counsel received the notice required under Civ.R. 41(B) that dismissal was a possibility when ACCSB orally moved for dismissal in his presence. *See Metcalf v. Ohio State University Hospitals*, 2 Ohio App.3d 166, 167 (10th Dist.1981) ("Had counsel actually appeared at trial, it would have been sufficient that the motion to dismiss be made in his presence for him to have received the required notice"); *Asres v. Dalton*, 10th Dist. Franklin No. 05AP-632, 2006-Ohio-507, ¶18 ("Requiring notice of the intended dismissal to allow the plaintiff or his counsel the opportunity to explain the failure to appear for trial serves no purpose when plaintiff's counsel is present for trial and has the

9

opportunity to explain plaintiff's failure to prosecute"); *Brown v. Bowers*, 1st Dist. Hamilton No. C-070797, 2008-Ohio-4114, ¶28 (same).

**{¶43}** In addition, the trial court provided Mr. Clark's counsel with a reasonable opportunity to defend against dismissal. Following ACCSB's oral motion for dismissal, the trial court inquired whether Mr. Clark's counsel was prepared to move forward on the motion for legal custody. While Mr. Clark may not be satisfied with his counsel's response, Civ.R. 41(B)(1) only requires that the trial court extend a reasonable *opportunity* to defend against dismissal. *See Quonset Hut, Inc.* at syllabus.

**{¶44}** Given Mr. Clark's sudden departure without explanation and his counsel's inability to proceed without him, we cannot say the trial court abused its discretion in dismissing Mr. Clark's motion for legal custody. *See Asres* at ¶19 (trial court did not abuse is discretion in dismissing for failure to prosecute where client did not appear and counsel indicated he did not know if his client still intended to proceed with the case); *Brown* at ¶23 (trial court did not abuse its discretion in dismissing for failure to prosecute where client did not appear and counsel advised she was unwilling to proceed without her clients being present).

### *Dismissal with Prejudice*

**{¶45}** Mr. Clark next argues that the trial court should have considered less drastic alternatives to the outright dismissal of his motion. While the trial court did not abuse its discretion in dismissing Mr. Clark's motion, we find that the motion should have been dismissed *without prejudice*.

**{¶46}** In this case, the trial court awarded only *legal* custody of T.C. to Ms. Rife, not *permanent* custody. "[A]n award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities." *In re C.R.*, 108 Ohio St.3d

10

369, 2006-Ohio-1191, ¶17. In the future, Mr. Clark has the express, statutory right to petition the court for a modification of custody. *See id.* We presume the trial court followed the law and simply omitted the "without prejudice" language from its judgment entry; thus, we modify the judgment to reflect that the dismissal was without prejudice.

{¶47} Mr. Clark's first assignment of error is without merit.

### Acceptance of Stipulations

{¶48} We will next address Mr. Clark's evidentiary challenge.

{¶49} In his third assignment of error, Mr. Clark asserts that the trial court erred by accepting his counsel's stipulations to the admission of his drug screen results and prior convictions.

{¶50} The admission of relevant evidence is within the sound discretion of the trial court. (Citations omitted.) *In re Davis*, 11th Dist. Ashtabula No. 2004-A-0068, 2005-Ohio-411, ¶16. A reviewing court will not reverse the trial court's admission of evidence absent an abuse of discretion. (Citations omitted.) *Id.*

{¶51} A stipulation is a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point in order to avoid the necessity for proof on an issue or to narrow the range of issues to be litigated. (Citation omitted.) *In re Q.R.*, 12th Dist. Clinton No. CA2017-11-020, 2018-Ohio-4785, ¶11. Once a stipulation is accepted by the court, it is binding upon the parties as a fact deemed adjudicated for purposes of determining the remaining issues in the case. (Citation omitted.) *Id.* If the parties wish to agree or to stipulate to various facts, courts should be permitted to accept freely entered into agreements or stipulations unless such agreements or stipulations are not in the child's best interest. (Citations omitted.) *Id.*

11

**{¶52}** Mr. Clark first argues that the evidence of his drug test screens and prior convictions was inadmissible because his counsel did not make the stipulations in his presence. However, all the cases Mr. Clark cites in support of this proposition involve criminal proceedings. *See State v. Harris*, 1st Dist. Hamilton Nos. C-160279, C-160280, C-160281, 2017-Ohio-5594, ¶36-37 (criminal jury trial); *State v. Post*, 32 Ohio St.3d 380, 393 (1987) (no contest plea); *State v. Robbins*, 176 Ohio St. 362, 364 (1964) (criminal trial by three-judge court).

**{¶53}** In fact, Mr. Clark's proposition originates from the Supreme Court of Ohio's holding in *Robbins*, which is explicitly applicable only to criminal matters: "Agreements, waivers and stipulations made by persons *accused of crimes*, or by their counsel in their presence, *during the course of a trial for crime*, are, after termination of the trial, binding and enforceable upon such persons as like agreements, waivers and stipulations are upon parties to civil actions." (Emphasis added.) *Id.* at paragraph two of the syllabus.

**{¶54}** Mr. Clark has failed to cite any legal authority prohibiting a trial court from accepting counsel's stipulations of evidence in a civil proceeding when the stipulations were not made in the presence of the client. Therefore, we cannot say the trial court abused its discretion by accepting counsel's stipulations outside of Mr. Clark's presence.

**{¶55}** Mr. Clark also argues that his counsel's stipulations to the admission of the drug screen results constituted the waiver of Mr. Clark's due process right to confront and cross-examine the experts who conducted the tests. According to Mr. Clark, this right was substantial, and he could only have knowingly and voluntarily waived it in person.

**{¶56}** The Sixth Amendment to the U.S. Constitution provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" The primary purpose of the Confrontation Clause is to

12

provide the accused an opportunity for cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).

{¶57} However, the constitutional right to confront witnesses is limited to criminal proceedings. *In re Henderson*, 11th Dist. Lake No. 97-L-068, 1997 WL 752633, *5 (Nov. 28, 1997); *In re P.L.*, 9th Dist. Summit No. 07CA009249, 2008-Ohio-2248, ¶22; *In re K.E.*, 12th Dist. Butler No. CA2007-03-069, 2007-Ohio-3967, ¶14; *In re Burchfield*, 51 Ohio App.3d 148, 154 (4th Dist.1988). Proceedings instituted in a juvenile court are civil in nature and not criminal. *In re Anderson*, 92 Ohio St.3d 63, 65 (2001). Therefore, Mr. Clark had no Sixth Amendment rights to waive at the evidentiary hearing.

{¶58} Further, we must reiterate that just prior to the evidentiary hearing, Mr. Clark suddenly left without explanation. In other settings, courts have held that a parent has a duty "to exhibit cooperation and communicate with counsel and with the court in order to have standing to argue that due process was not followed * * *." *See e.g.*, *In re J.S.*, 9th Dist. Lorain No. 10CA009908, 2011-Ohio-985, ¶17. Mr. Clark should not be heard to complain about the procedures of a hearing that he voluntarily abandoned with no explanation.

{¶59} The trial court did not abuse its discretion by accepting counsel's stipulations to the admission of Mr. Clark's drug screen results.

{¶60} Mr. Clark's third assignment of error is without merit.

**Granting of ACCSB's Motion**

{¶61} In his second assignment of error, Mr. Clark asserts that the trial court erred in granting legal custody of T.C. to Ms. Rife.

***Unsuitability***

13

{¶62} In his first issue for review, Mr. Clark argues that instead of examining whether custodial placement was in the best interest of the child, the trial court should have determined whether Mr. Clark was unsuitable by a preponderance of the evidence.

{¶63} A juvenile court's grant of legal custody is reviewed under an abuse of discretion standard. *In re Yates*, 11th Dist. Geauga No. 2008-G-2836, 2008-Ohio-6775, ¶32. An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *In re L.L.S.*, 11th Dist. Portage No. 2016-P-0068, 2017-Ohio-7450, ¶20, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

{¶64} The Supreme Court of Ohio has held that "parents who are suitable persons have a 'paramount' right to the custody of their minor children." (Citations omitted.) *In re Murray*, 52 Ohio St.3d 155, 157 (1990). However, when a child is adjudicated a dependent child, the juvenile court may, as its dispositional order, place the child under the protective supervision or temporary custody of a children services agency, or award legal custody of the child to a third party. R.C. 2151.353(A)(1), (2) and (3); *In re Yates* at ¶29.

{¶65} "A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *In re C.R.*, *supra*, at paragraph two of the syllabus. Thus, when a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent. *Id.* at ¶24.

14

**{¶66}** Further, the court retains jurisdiction over any child for whom the court issues an order of disposition. R.C. 2151.353(F)(1). The court may amend a dispositional order at any time upon its own motion or upon the motion of any interested party. R.C. 2151.417(B); 2151.353(F)(2). At any hearing in which a court is asked to modify an order of disposition, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child. R.C. 2151.42(A); R.C. 2151.415(B).

**{¶67}** In this case, the record indicates ACCSB obtained ex parte emergency temporary custody of T.C. in August of 2017 and filed a complaint for temporary custody shortly thereafter. At the adjudicatory hearing held in September of 2017, Mr. Clark and Ms. Fortney stipulated to a finding of dependency, and the magistrate ordered that ACCSB continue temporary custody of T.C. This finding of dependency also constituted an implicit determination that Mr. Clark was unsuitable. *See In re C.R.*, paragraph two of the syllabus.

**{¶68}** At the disposition hearing held in October of 2017, the magistrate heard evidence and ultimately continued temporary custody of T.C. with ACCSB. However, the trial court retained jurisdiction over T.C. *See* R.C. 2151.353(F)(1).

**{¶69}** In March of 2018, ACCSB filed its motion to grant legal custody to Ms. Rife, and Mr. Clark filed his own motion for legal custody. These motions constituted requests that the trial court amend its prior dispositional order. *See* R.C. 2151.417(B); 2151.353(F)(2).

**{¶70}** In such situations, the trial court is statutorily required to determine the best interest of the child. *See* R.C. 2151.42(A); R.C. 2151.415(B). Since Mr. Clark previously stipulated to a finding of dependency, and thus, unsuitability, the trial court was not

15

required to again determine Mr. Clark's unsuitability at the evidentiary hearing on these motions. *See In re C.R.* at ¶24.

**{¶71}** Mr. Clark cites the First District Court of Appeals' decision in *In re H.J.H.*, 1st Dist. Hamilton No. C-180019, 2019-Ohio-116, for the proposition that "[o]nly if the trial court determines that the parent is unsuitable, should it then examine which custodial parent would be in the best interest of the child." *Id.* at ¶4. *In re H.J.H.* is factually distinguishable because in that case there had been no prior adjudication of abuse, neglect, or dependency. Therefore, it was necessary for the trial court to initially determine the issue of unsuitability.

**{¶72}** This case is analogous to the situation we addressed in *In re Sorgen*, 11th Dist. Lake No. 2005-L-121, 2006-Ohio-4180. In that case, the trial court awarded emergency custody of the child to the Lake County Department of Job and Family Services ("LCDJFS"). *Id.* at ¶2. LCDJFS thereafter filed a complaint seeking temporary custody. *Id.* at ¶3. At the adjudication hearing, the mother and father stipulated to neglect, and the trial court ordered LCDJFS to continue temporary custody. *Id.* at ¶6.

**{¶73}** The child's grandparents subsequently moved for legal custody. *Id.* at ¶7. At the evidentiary hearing, the magistrate determined custody based on the child's best interest rather than the mother's unsuitability, because the child had previously been adjudicated a neglected child. *Id.* at ¶11-12. The mother appealed the trial court's adoption of the magistrate's decision. *Id.* at ¶12. We affirmed based on the authority of the Supreme Court of Ohio's decision in *In re C.R.*, holding that the trial court did not abuse its discretion when it applied the best interest standard. *Id.* at ¶22, 26.

**{¶74}** In this case, the trial court applied the correct legal standard by considering T.C.'s best interest and, therefore, did not abuse its discretion.

16

***Manifest Weight of the Evidence***

**{¶75}** In his second issue presented for review, Mr. Clark argues that the "adjudication of dependency was against the manifest weight of the evidence."

**{¶76}** Mr. Clark misstates the nature of the proceeding that gave rise to his appeal. The magistrate held the adjudicatory hearing in September of 2017, and Mr. Clark and Ms. Fortney stipulated to a finding of dependency. A disposition hearing followed in October of 2017, where the magistrate continued custody with ACCSB. The evidentiary hearing held in October of 2018 related to the competing motions ACCSB and Mr. Clark filed requesting that the trial court amend its prior dispositional order, not adjudication of dependency. Therefore, Mr. Clark's arguments and legal authority under this assignment of error relating to dependency adjudications are not applicable to this case.

**{¶77}** To the extent Mr. Clark is arguing that the trial court's granting of legal custody to Ms. Rife was against the manifest weight of the evidence, we disagree.

**{¶78}** "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus.

**{¶79}** When considering the manifest weight of the evidence in a civil case, the trial court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶20, citing *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

17

**{¶80}** "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Id.* at ¶21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77 (1984), fn. 3. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*, citing *Seasons Coal Co.* at fn. 3.

**{¶81}** Mr. Clark first argues that the stipulations did not, as a matter of law, rise to the level of clear and convincing evidence. We previously rejected this argument in *In re B.M.*, 181 Ohio App.3d 606, 2009-Ohio-1718 (11th Dist.), where we held that since a stipulation has the same force and effect as testimony, a stipulation may, depending on the nature of the matter or matters stipulated, rise to the level of clear and convincing evidence. *Id.* at ¶43, citing *State v. Turner*, 105 Ohio St.3d 331, 2005-Ohio-1938, ¶40.

**{¶82}** Mr. Clark also argues that his prior conduct was only relevant to the extent it showed a detrimental impact upon T.C. However, the cases Mr. Clark has cited all relate to dependency adjudications and are inapplicable.

**{¶83}** In any event, the trial court indicated in its judgment entry that its decision was also based on the GAL's report and the testimony of Ms. Mickle, not just on the stipulations regarding Mr. Clark's positive drug screen results and prior convictions.

**{¶84}** Finally, Mr. Clark points to evidence in the record in his favor, including his completion of counseling and anger management, maintenance of a stable place of residence, and having a source of income.

**{¶85}** While Mr. Clark's personal achievements are commendable, the record also reflects that in addition to three positive drug screen results and prior convictions, Mr.

18

Clark had recently been incarcerated for a parole violation for domestic violence against Ms. Fortney, he was not employed, there were multiple police reports reflecting disputes between Mr. Clark and Ms. Fortney, and there was evidence that Mr. Clark was not able to address T.C.'s basic needs. Further, Ms. Rife had been with T.C. for over a year, and she was able to meet all his needs on a daily basis.

{¶86} The trial court was presented with an abundance of competent, credible evidence with which to support the determination that a grant of legal custody to Ms. Rife was in T.C.'s best interest. Therefore, the trial court's decision granting legal custody to Ms. Rife was not against the manifest weight of the evidence.

{¶87} Mr. Clark's second assignment of error is without merit.

{¶88} For the foregoing reasons, we modify the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, to reflect that the dismissal of Mr. Clark's motion for legal custody was without prejudice and affirm as modified.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.