[Cite as *In re A.W.*, 2022-Ohio-1553.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

IN THE MATTER OF:

A.W., ABUSED CHILD

**CASE NO. 2021-A-0026**

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2021 JC 00015

**O P I N I O N**

Decided: May 9, 2022
Judgment: Affirmed

*Matthew C. Bangerter,* The Bangerter Law Office, 4124 Erie Street, Willoughby, OH 44094 (For Appellant).

*Colleen M. O'Toole*, Ashtabula County Prosecutor, *Shelley M. Pratt*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee).

*Carol G. Grasgreen*, Carol G. Grasgreen & Associates Co., LPA, 5061 Glenn Lodge Road, Mentor, OH 44060 (Guardian Ad Litem).

JOHN J. EKLUND, J.

{¶1} Appellant, Thea Moller, Mother of A.W., appeals following the Ashtabula Court of Common Pleas, Juvenile Division's Judgment Entry requiring appellant to cooperate with the Ashtabula County Children Service Board's (ACCSB) investigation into the circumstances of A.W.'s injury.

{¶2} Appellant raises one assignment of error arguing that the trial court erred by requiring her to cooperate with ACCSB's investigation in contravention of her Fifth Amendment rights against self-incrimination.

{¶3} After review of the record and the applicable caselaw, we find the appellant's assignment of error to be without merit. Appellant's Fifth Amendment privileges were not violated. Her right against self-incrimination does not foreclose the trial court's ability to make a reasonable dispositional custody decision tailored to the best interests of the child in the absence of her cooperation with ACCSB. The trial court did not compel appellant's testimony in violation of the Fifth Amendment but did require appellant's cooperation with the investigation into A.W.'s injuries to assure the safety of the child. The judgment of the Ashtabula Court of Common Pleas, Juvenile Division is affirmed.

## Substantive and Procedural History

{¶4} On February 19, 2021, ACCSB filed a Verified Complaint and ex parte Motion for Temporary Custody in the Ashtabula County Court of Common Pleas, Juvenile Division. ACCSB alleged that A.W. was an abused child after he was hospitalized presenting with intermittent seizure-like activity, intercranial hemorrhage, tachycardia, and unequal pupils. This injury was characterized as non-accidental and consistent with "shaken baby syndrome." The trial court granted ACCSB temporary custody of A.W. and he was placed in the care of appellant's cousin.

{¶5} On April 13, 2021, Lisa Savel, A.W.'s maternal grandmother, filed a Motion to Intervene and a Motion for Temporary Custody.

{¶6} On April 21, 2021, the court held an adjudicatory hearing and found that A.W. was an abused child pursuant to R.C. 2151.031(B). Under R.C. 2151.031(B), an abused child includes any child who "[i]s endangered as defined in section 2919.22 of the Revised Code, except that the Court need not find that any person has been convicted under that section in order to find that the child is an abused child[.]"

{¶7} On May 10, 2021, the court held a dispositional hearing pursuant to R.C. 2151.35(A)(1) to "hear the evidence as to the proper disposition to be made" for the child. At the hearing, all parties agreed that appellant and father have complied with three of the four goals identified in the case plan. The terms of the case plan were that A.W.'s parents were to: (1) maintain sobriety; (2) have a safe and stable housing and income with proof of residency; (3) complete a parenting class; and (4) cooperate with the investigation concerning A.W.'s injuries. The final unmet goal was for A.W.'s parents to cooperate with the investigation concerning A.W.'s injuries.

{¶8} At the dispositional hearing, ACCSB caseworker Christina Church testified that A.W. was removed from the household because he showed symptoms of "shaken baby syndrome." The medical records indicated that the injury was non-accidental. Church said that because mother and father had not cooperated with the investigation into A.W.'s injuries, ACCSB was seeking to maintain temporary custody and to continue placement of A.W. with appellant's cousin. In addition, the Guardian ad Litem in the case recommended temporary custody remain with ACCSB and that the court adopt the case plan with the requirement that the parents cooperate with the investigation.

{¶9} The basis for ACCSB's request for cooperation was "[d]ue to the extent of the injuries and to make sure that he's in a safe environment, we need to know how the

3

Case No. 2021-A-0026

injuries occurred." Church said that no one besides appellant, father, and grandmother had been identified as potential perpetrators in the case. The only form of cooperation ACCSB was seeking was for mother and father to be "interviewed by the police."

{¶10} After the Dispositional Hearing, the magistrate issued a Decision granting legal custody to appellant with protective custody to ACCSB. The magistrate modified the case plan by removing the requirement that A.W.'s parents cooperate with the investigation into his injuries and added an additional goal of meeting A.W.'s basic emotional, educational, medical, dental, and mental needs. In that Decision, the magistrate also noted that grandmother's motion to intervene had been granted without objection and that her motion for temporary custody was to be held in abeyance.

{¶11} ACCSB timely objected to the magistrate's Decision, appellant and father responded to the objections while grandmother did not. The trial court reviewed the objections noting that A.W.'s injuries were non-accidental, that it was uncontroverted that the injuries occurred while the child was "in the care of Mother, Father and/or Maternal Grandmother. * * * It is implicit upon this record this child was injured via a culpable act." The court quoted *In re Pitts*, 38 Ohio App.3d 1, 5, 525 N.E.2d 814 (5th Dist.1987), and said that R.C. 2151.031 makes no reference to fault in finding that a child is abused but that the "'focus is upon harm to the child, not upon parental or custodial blame-worthiness.'"

{¶12} The court acknowledged that appellant and father were opposed to the requirement to cooperate with the investigation claiming it would interfere with their Fifth Amendment rights against self-incrimination and that there is no evidence of parental

4

fault. However, the court said that parental fault is not the issue. Rather, the ongoing safety of the child was the central focus.

{¶13} The court said there was no evidence to suggest that appellant or father had personally asserted the Fifth Amendment right against self-incrimination but instead, the evidence indicated that appellant and father had simply not engaged in any way with investigators. The court noted that appellant and father are not required to cooperate with law enforcement and that such a decision "does not automatically implicate the Fifth Amendment rights of the parent. Such a decision also does nothing to impact this Court's responsibility to ensure the safety of this child. * * * At this point in these proceedings, the applicability of the Fifth Amendment has not been demonstrated to exist."

{¶14} The court found that A.W.'s placement with appellant was "not a suitable dispositional option, and restoring custody to Mother with a grant of protective supervision to the agency is insufficient to assure the safety of this child." For the same reasons, the court found that "Father and Maternal Grandmother are also not suitable dispositional alternatives." Therefore, the court sustained ACCSB's objections and restored the requirement that appellant and father cooperate with the investigation. The court also denied grandmother's Motion to Intervene and Motion for Temporary Custody because the record established by the Dispositional Hearing indicated that she was not a suitable dispositional alternative to appellant or father because she was one of the three people caring for A.W. at the time of his non-accidental injuries.

### Assignment of Error and Analysis

{¶15} Appellant timely filed this appeal raising a single assignment of error.

5

**{¶16}** "The trial court erred to the prejudice of the Mother-Appellant in allowing the State to require the Appellant to submit to a law enforcement interview as a condition of regaining custody of her child. (09-01-2021 Judgment Entry)."

**{¶17}** Appellant argues that she has an "absolute right" under the Fifth Amendment to decline to make any statements to law enforcement and that, because of this right, the trial court erred by maintaining the requirement that she cooperate with the investigation into A.W.'s injuries as a condition of the case plan.

**{¶18}** It is worth noting that appellant states in her brief that she has spoken to representatives of ACCSB on numerous occasions and maintains that she did not cause A.W.'s injuries and does not know the cause of A.W.'s injuries. However, the trial court found in its Judgment Entry that "there is no testimony or evidence in this record that even suggests Mother and/or Father have *ever met with ACCB and/or law enforcement* regarding the circumstances of this child's injury." (Emphases in original).

**Dispositional Hearing Standard:**

**{¶19}** In Ohio, the purpose of the adjudicatory hearing in a child-neglect case is to determine whether the alleged neglect is true. *See* Juv.R. 2(B). A finding of neglect, as is the case here, places the child within the court's jurisdiction. The purpose of the dispositional hearing is to determine what action shall then be taken with respect to the child with a focus on the best interest of the child. *See* Juv.R. 3(M); *In re Baby Girl Baxter,* 17 Ohio St.3d 229, 233, 479 N.E.2d 257 (1985). The Ohio Supreme Court has recognized that "parents who are suitable persons have a 'paramount' right to the custody of their minor children." (Citations omitted.) *Matter of T.C.*, 11th Dist. Ashtabula No. 2018-A-0090, 2019-Ohio-2287, ¶ 64, quoting *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169

6

(1990). "However, parental rights are not absolute and the state has a right to intervene when the exercise of the parent's rights presents a health or safety hazard to a child." *Id.*, citing *In re Cunningham*, 59 Ohio St.2d 100, 106 391 N.E.2d 1034. The law does not require a child to be placed in a particular environment before a court can determine whether the environment is unhealthy or unsafe. *In re Bishop*, 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (5th Dist.1987), citing *In re Campbell*, 13 Ohio App.3d 34, 36, 468 N.E.2d 93 (12th Dist.1983)

**Fifth Amendment Right Against Self-Incrimination:**

{¶20} The Fifth Amendment of the United States Constitution, incorporated to the States by the Fourteenth Amendment, "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). The standard for determining whether the privilege applies is "whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

{¶21} The type of proceeding does not determine the availability of the privilege; rather, it turns upon whether the statement or admission is or may be inculpatory. *In re Billman* (1993), 92 Ohio App.3d 279, 280–281, 634 N.E.2d 1050, 1050–1052. Fifth Amendment privileges may not be employed "to avoid giving testimony that" a person "simply would prefer not to give." *Roberts v. United States,* 445 U.S. 552, 560 n. 7 (1980).

7

"The Fifth Amendment right against self-incrimination is a personal right 'that can only be invoked by the individual whose testimony is being compelled.' *Moran v. Burbine* (1986), 475 U.S. 412, 433, 106 S.Ct. 1135, 89 L.Ed.2d 410, fn. 4 (during interrogation, police rebuffed attorney who had been hired by a Mirandized suspect's sister, where suspect had not requested assistance of counsel)." *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 29.

{¶22} To qualify for the Fifth Amendment privilege, the communication in question must be testimonial, incriminating, and compelled. *See United States v. Hubbell*, 530 U.S. 27, 34–38, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information". *Doe v. United States*, 487 U.S. 201, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). A court may not compel a parent's admission to a crime in custody proceedings, if the admission could be used against the parent in a subsequent criminal proceeding, under the threat of losing parental rights. *Matter of Ma.H.,* 134 N.E.3d 41, 47 (Ind. 2019); *See In re A.D.L.*, 133 Nev. 561, 402 P.3d 1280, 1285 (2017) (collecting cases). *See generally Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) ("[W]hen a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment[.]"). *Matter of Ma.H.* at 47.

{¶23} In *In re Amanda W.*, 124 Ohio App.3d 136, 705 N.E.2d 724 (6th Dist.1997), the Sixth District held that it was a violation of father's Fifth Amendment right against self-incrimination where the case plan in a child abuse case required counseling that would result in the admission of father's guilt. *Id.* at 141. The court said that because any

8

admission pursuant to counseling would require mandatory reporting under R.C. 2151.421, the father could reasonably apprehend that any admission to his sexual abuse could lead to criminal prosecution. *Id.*

{¶24} The Sixth District further said that "an implicit, and potent, penalty for failure to satisfy the requirements of a particular case plan is the loss of a parent's fundamental liberty right to the care, custody, and management of his or her child." *Id.*, citing *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171–1172, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–1395, 71 L.Ed.2d 599, 606. The record in that case made it clear that father was "made fully aware of the fact that the '*failure to admit*' would lead to the imposition of this penalty. *Id.* (Emphases added). The court held that this "compelling sanction * * * forces an individual to admit to offenses in violation of his right not to incriminate himself. * * * The state was required to offer * * * protection from the use of any compelled statements and any evidence derived from those answers in a subsequent criminal case[.]" *Id*.

{¶25} In a similar case, the Oregon Court of Appeals discussed cases involving potential Fifth Amendment rights. The Oregon court surveyed *In re Amanda W., supra,* as well as cases from Vermont, Nebraska, Minnesota, New Jersey, and New York. *Dept. of Human Services v. K.L.R.*, 235 Or.App. 1, 230 P.3d 49, citing *In re J.A., Juvenile,* 166 Vt. 625, 699 A.2d 30 (1997) (*J.A.*); *In re Interest of Clifford M.,* 6 Neb.App. 754, 765, 577 N.W.2d 547 (1998); *Matter of Welfare of J.W.,* 415 N.W.2d 879 (Minn.1987); *Div. of Youth & Family Services v. S.S.,* 275 N.J.Super. 173, 177, 645 A.2d 1213, 1216 (1994); *In re S.,* 66 Misc.2d 683, 690, 322 N.Y.S.2d 170, 177–78 (1971).

9

**{¶26}** In *K.L.R.*, the court said that there is no Fifth Amendment violation when there was not "a scintilla of evidence that any incest treatment program required an admission of guilt, let alone that all treatment programs require it or that [father] has tried unsuccessfully to obtain treatment that would not require it." *K.L.R.*, 235 Or.App. 4, citing *State ex rel. Juvenile Dept. of Lane Cty. v. Black,* 101 Or.App. 626, 792 P.2d 1225 (Or.App.1990). In contrast, the Oregon Court of Appeals noted that where a juvenile court ordered a mother to complete a polygraph examination asking mother whether she injured the child or knew who did, the court said that this did violate the Fifth Amendment because the answers "could expose mother to criminal liability." *Id.* at 4. Moreover, the "court's order put her in the Hobson's choice of waiver her rights against self-incrimination or suffering adverse consequences in her quest to preserve her parental rights." *Id.*

*Reiner II*:

**{¶27}** Appellant argues that the trial court erred by sustaining ACCSB's objections to the magistrate's decision to remove the requirement that she cooperate with the investigation into A.W.'s injuries. She claims that she has an "absolute right" under the Fifth Amendment to decline to make any statements to law enforcement. In her brief, appellant claims that *State v. Reiner*, relied upon by the trial court, actually supports her position that the trial court's order is in violation of the Fifth Amendment.

**{¶28}** In *State v. Reiner,* 89 Ohio St.3d 342, 731 N.E.2d 662 (2000) (*Reiner I*), the defendant had been convicted of involuntary manslaughter after the death of his infant child. He appealed claiming that he was prejudiced by the grant of transaction immunity to a babysitter who testified as a witness for the prosecution. The babysitter denied

10

wrongdoing. In *Reiner I*, the court held that the babysitter's claim of innocence precluded her Fifth Amendment privilege. *Id.* at 352

{¶29} On appeal to the United States Supreme Court in *Ohio v. Reiner*, 532 U.S. 17, 121 S.Ct. 1252, 149 L.Ed.2d 158 (2001), the court held that despite the babysitter's claim of innocence, she did have a reasonable cause to apprehend danger from her answers at trial and could assert her Fifth Amendment privilege. The reason for this was because the babysitter had spent significant time alone with the victim within the time frame of the fatal trauma. *Id.* at 21. Therefore, it was reasonable for her to fear that her answers might incriminate her. *Id.* at 21-22*.*

{¶30} On remand, the Ohio Supreme Court in *State v. Reiner*, 93 Ohio St.3d 601, 757 N.E.2d 1143 (2001) (*Reiner II*) reversed to the extent that it held the babysitter did not have a Fifth Amendment privilege against self-incrimination and affirmed the original decision that the grant of immunity to the babysitter resulted in prejudice to the defendant and did not further the administration of justice. *Id.* The Ohio Supreme Court noted in *Reiner II* that the prosecution "did not have two potentially culpable persons. Instead, this was an either/or situation." *Id.* at 605. Either Reiner or the babysitter was guilty. The court said that a grant of immunity is not appropriate in an either/or situation because "it could actually hinder the search for truth." *Id.*

{¶31} The circumstances here differ from *Reiner II*. Under *Reiner II's* holding, appellant could have a cognizable Fifth Amendment privilege because she, like the babysitter in the case, spent significant time alone with A.W. within the time frame of his injuries and it is reasonable that she may apprehend self-incrimination.

11

**{¶32}** However, the similarity ends there. Unlike in *Reiner II*, appellant claims here that her Fifth Amendment privileges overcome the trial court's ability to make a dispositional determination that is in the best interest of the child. The distinctions lead to the failure of appellant's assignment of error for several reasons.

**{¶33}** First, the trial court has not compelled an admission of a crime as a condition of reunification with A.W., nor has the court sought to compel appellant to submit to a polygraph or to testimony in a trial or hearing. Had the court done so, such an order would plainly violate the Fifth Amendment. *See In re Amanda W., supra; Dept. of Human Services v. K.L.R.*, *supra*. The trial court has not terminated or limited appellant's parental rights based on an unwillingness to acknowledge her wrongdoing. *See Dept. of Human Services v. K.L.R.*, *supra*; *In re Interest of Clifford M.*, 6 Neb.App at 765. ("[T]here is a very fine, although very important, distinction between terminating parental rights based specifically upon a refusal to waive protections against self-incrimination and terminating parental rights based upon a parent's failure to comply with an order to obtain meaningful therapy or rehabilitation, perhaps in part because a parent's failure to acknowledge past wrongdoing inhibits meaningful therapy. The latter is constitutionally permissible; the former is not.")

**{¶34}** Here, the court is requiring cooperation with the investigation as part of the case plan. The court required cooperation with the investigation to serve the best interests of the child, to which parental interests are subject. *See In re Cunningham*, 59 Ohio St.2d 100, 391 N.E.2d 1034 (1979) ("As it has been perceptively noted elsewhere, 'it is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'") *Id.* at

12

106, quoting *In re R. J. C.*, 300 So.2d 54, 58, (Fla.App. 1974)). Unlike *In re Amanda W.*, the court has not imposed a penalty for a "failure to admit." Instead, the trial court is requiring cooperation, which does not require self-incrimination.

{¶35} *Reiner II* would suggest that appellant has a cognizable Fifth Amendment privilege in this situation. However, there is nothing in the record to suggest that appellant has met with law enforcement. Therefore, appellant has not yet demonstrated the applicability of the Fifth Amendment. The time may come when appellant can demonstrate the applicability of, and invoke, her Fifth Amendment privilege. However, it has not yet.

{¶36} The trial court made its custody decision based upon the evidence adduced at the Dispositional Hearing in furtherance of the best interests of the child. Appellant did not testify at the hearing and did not specifically invoke her right against self-incrimination. The trial court's Judgment Entry did not draw an adverse inference about the appellant's guilt based upon her refusal to testify at the dispositional hearing. Rather, the trial court made its dispositional determination about A.W.'s best interests based upon appellant's failure to cooperate with the investigation. In its Judgment Entry, the court said that there was "no testimony or evidence in this record that even suggests mother and/or Father have *ever met with ACCSB and/or law enforcement* regarding the circumstances of this child's injury." (Emphases in original). The court said that appellant's decision to not cooperate with ACCSB or law enforcement "does not automatically implicate the Fifth Amendment rights of the parent. Such a decision also *does nothing to impact this Court's responsibility to ensure the safety of this child.*" (Emphases added).

13

{¶37} The court considered the welfare of A.W. and noted that the "'law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm.' *In re S.J.J.*, [12th Dist. Butler No. CA2006-02-021] 2006-Ohio-6354, at ¶ 12." Because of the lack of evidence that the danger to A.W. had been "identified, ameliorated or otherwise addressed", the trial court relied on the evidence that it did have to issue its Judgment Entry. The entry determined that appellant was not a suitable dispositional option for custody and retained the cooperation requirement and A.W.'s custody with ACCSB to "assure the safety of this child."

{¶38} For the above reasons, we hold that the case plan requirement to cooperate with the investigation does not violate appellant's Fifth Amendment right against self-incrimination. The trial court can require appellant to cooperate with the investigation into A.W.'s injuries as part of the case plan. The Judgment Entry does not compel speech from appellant, and appellant cannot blanketly invoke the Fifth Amendment in a merely theoretical manner prior to questioning. At this time, the record shows that appellant has not been questioned and that she has not asserted her personal right against self-incrimination. *See Moran*, 475 U.S. at 433. Further, the trial court has not precluded appellant from personally invoking her right against self-incrimination should she choose to do so during the investigation. The trial court has not violated appellant's Fifth Amendment privilege because it did not order her to waive the privilege when it merely required her cooperation with the investigation as part of the case plan.

{¶39} The trial court's Judgment Entry does not prohibit appellant from invoking her Fifth Amendment privileges during her cooperation with the investigation as the situation demands. If, during her cooperation with the investigation, she determines that

14

she must invoke her Fifth Amendment privilege, she is free to do so. Although the trial court required cooperation with the investigation, cooperation alone does not necessarily entail the implication of the Fifth Amendment privilege. To be sure cooperation with the investigation could involve both statements that are protected and not protected by the right against self-incrimination. It may well be that during cooperation with the investigation, that the Fifth Amendment could be implicated. However, that situation is not before this court, and we decline to issue an advisory ruling giving guidance on how to resolve such a situation should it arise. *See Egan v. Natl. Distillers & Chem. Corp.*, 25 Ohio St.3d 176, 495 N.E.2d 904 (1986), syllabus.

{¶40} Accordingly, appellant's sole assignment of error is without merit.

{¶41} For the foregoing reasons, the judgment of the Ashtabula Court of Common Pleas, Juvenile Division is affirmed.

THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2021-A-0026